729 So.2d 675 (1999)
Paul E. GARDNER, et al.
v.
ZULU SOCIAL AID AND PLEASURE CLUB, INC.
No. 98-CA-1040.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 1999.
Writ Denied May 7, 1999.
*676 Marianne Morales Zimmer, Metairie, Louisiana, Paul E. Gardner, New Orleans, Louisiana, for plaintiff/appellant.
Wiley G. Lastrapes Jr., New Orleans, Louisiana, for defendant/appellee.
BYRNES, Judge.
The plaintiffs-appellants allege that they had a contract to ride in the Zulu parade on Mardi Gras Day. Less than four blocks into the parade, the rear left tire broke off the axle of the float, leaving the float disabled and the riders stranded. The float was not repaired and the riders allege they had to take shelter in a nearby church as unruly spectators surrounded the float in search of throws. That was the end of the parade for them. As a consequence, plaintiffs allege damages for breach of contract. They seek pecuniary damages including fees and costs for: the float, costumes, make-up and labor, renting a dressing room, Krewe meetings, Mardi Gras Day transportation, food and drink for the float, float security, non-member riders fee, mandatory throws, coconuts and decorating materials, and assorted dated and undated throws. Plaintiffs also seek nonpecuniary damages, including but not limited to, mental anguish, inconvenience and loss of enjoyment "due to the failure of the defendant to meet its contractual obligation."[1]
Zulu filed a peremptory exception of no cause of action, or in the alternative, a motion for summary judgment, arguing that Zulu was immune from suit under LSA-R.S. 9:2796, the Mardi Gras Parade immunity statute. In their opposition brief, plaintiffs argue that the Mardi Gras Parade immunity statute does not apply to their contract claims because the statutory immunity is applicable to tort claims only. Zulu responded that the plaintiffs had no contract with Zulu. The trial court granted Zulu's exception of no cause of action without written reasons, but allowed plaintiffs fifteen days in which to amend their petition in order to state a cause of action. Plaintiffs chose not to amend, but brought this appeal instead. We affirm.
*677 The purpose of an exception of no cause of action is to determine the sufficiency in law of the petition. City of New Orleans v. Board of Com'rs, 93-0690 (La.7/5/94); 640 So.2d 237, 241. It questions whether the petition sufficiently alleges grievances for which the law affords a remedy. Lewis v. Aluminum Company of America, 588 So.2d 167, 169 (La.App. 4 Cir.1991), writ denied 592 So.2d 411 (La.1992). All well-pleaded allegations of fact must be accepted as true when considering an exception of no cause of action. Williams v. Touro Infirmary, 578 So.2d 1006 (La.App. 4 Cir.1991). The burden is on the exceptor. Haspel & Davis Mill. & Planting Co. Ltd. v. Board of Levee Com'rs of Orleans Levee Dist., 95-0233 (La.App. 4 Cir. 9/4/96); 680 So.2d 159, writ denied 96-2430 (La.12/6/96); 684 So.2d 932. The exception of no cause of action must be overruled if the petition states a cause of action on any grounds or portion of demand. Reis v. Fenasci & Smith, 93-1785 (La.App. 4 Cir. 4/14/94); 635 So.2d 1319. The exception of no cause of action must be decided upon the face of the petition and any attached documents.[2]Williams v. Touro Infirmary, supra. No evidence may be introduced at any time to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931.
Zulu argues that the plaintiffs had no direct contract with Zulu. The plaintiffs seem to acknowledge the truth of this in their brief when they argue that they are the third-party beneficiaries pursuant to LSA-C.C. art.1978 of a contract between Zulu and another. Regardless, we are unable to take cognizance of the contents of documents not annexed to the petition when reviewing an exception of no cause of action. Neither of plaintiffs' petitions have any documents or copies of contracts annexed. As stated previously, we are limited to the allegations of the petitions which we must assume to be true when reviewing an exception of no cause of action. We are precluded from noticing the contents of any documents or copies of contracts alluded to by the parties, but not annexed to the petition(s). The plaintiffs have made no allegations in their petition that they are a third party beneficiary of any contract. Accordingly, those portions of the record that are properly before this Court on an exception of no cause of action do not raise this issue. Therefore, we shall proceed based on the assumption that a contract of some kind existed entitling the plaintiffs to ride the Zulu parade as alleged in numbered paragraph "2" of their original petition, without being able to refer to any specific provisions thereof. We shall also assume that the float breakdown occurred as alleged. Finally, we must assume that the basis for Zulu's liability to the plaintiffs is as alleged in numbered paragraph "5" of the plaintiffs' original *678 petition, i.e., "providing the plaintiffs with a defective float and negligent planning for potential breakdowns."
Zulu claims that it is immune from plaintiffs claim under LSA-R.S. 9:2796. Plaintiffs counter that LSA-R.S. 9:2796 was intended to apply only to "offenses and quasi offenses", and not to claims sounding in contract.[3] It is true that LSA-R.S. 9:2796 B appears to be limited to immunity from being "struck by any missile, whatsoever which has been traditionally thrown, tossed or hurled by members of the krewe or organization..." However, paragraph "A" of LSA-R.S. 9:2796 is much broader in scope than paragraph "B ." LSA-R.S. 9:2796 A refers to "any loss or damage related to the parades... unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization." [Emphasis added.] Plaintiffs made no allegations of deliberate or wanton acts, or gross negligence. Therefore, the only question is whether plaintiffs' claim constitutes "any loss or damage related to the parades" under 9:2796 A. The answer to this question is, "Yes." Therefore, Zulu is immune.
To limit the effect of 9:2796 to damages sustained by onlookers who are injured by things thrown from floats would render 9:2796 A meaningless. Such damages are specifically covered by paragraph "B." We must assume that the legislature would not have enacted 9:2796 A without some additional purpose. The expansive language in paragraph "A" referring to "any loss or damage related to parades" is intended to cover the broad spectrum of risks and losses normally associated with parading. Among such risks is the well-known possibility of a float breakdown. The plaintiffs contend that we are opening the door to allowing parading organizations to take money from would-be participants without any intention of providing them with an opportunity to parade. But the float breakdown in the instant case is very different from a situation where a parading organization might take a rider's money and then arbitrarily refuse to allow that rider to ride. Such a situation would be covered by the deliberate and wanton act exclusion found in 9:2796 A. This exclusion covers actions done in bad faith.
The record reflects that the defendant in its "Defendant's Exception of No Cause Action, and, Alternatively, Motion for Summary Judgment," which exception and alternative summary judgment motion resulted in the judgment that is the subject of this appeal, specifically noted that the plaintiffs made no allegations of deliberate or wanton misconduct or gross negligence. Thus, after having the matter called to their attention, plaintiffs still made no such allegations of deliberate or wanton acts or gross negligence, even after being given the opportunity to amend. To put it another way, plaintiffs failed to make any explicit allegations in their petitions of deliberate or wanton misconduct or gross negligence. Nor did they plead any facts from which such levels of culpability could be inferred. They have not raised this as an issue in argument, preferring to base everything on their contention that the parading immunity does not apply to their contractual claims.
Float breakdowns in Mardi Gras parades are a common occurrence and, therefore, a risk that should be reasonably anticipated. In other words, it is a risk normally associated with parading, and, therefore, one covered by the LSA-R.S. 9:2796 immunity. This Court is sympathetic with plaintiffs. It must be a great disappointment to wait perhaps a full year in eager and excited anticipation for the great day, only to have all high hopes and expectations dashed by a float breakdown. Were it not for the statutory immunity, this court would be receptive to plaintiffs' claims, not just for pecuniary damages, but also for damages to compensate them for their disappointment as well. But float breakdown, like police strikes and inclement weather are known contingencies. When it comes to Mardi Gras parading "you pay your money and you take your chances." The legislature in enacting LSA-R.S. 9:2796 can be assumed *679 to have weighed the public utility of Mardi Gras parades against the risks ordinarily associated with such events, such as being struck by throws, or having a parade canceled, or having a float break down. The immunity granted by LSA-R.S. 9:2796 represents a decision by the legislature that the public utility of Mardi Gras parades outweighs the risks normally associated with such events.[4]
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.
PLOTKIN, J., dissents with reasons.
PLOTKIN, Judge, dissenting.
The unambiguous purpose of the Mardi Gras Parade immunity statute is to "grant tort immunity to krewes or organizations which present Mardi Gras parades." June 19, 1979, Minutes of the House Committee of Civil Law and Procedure (emphasis added). I do not agree with the majority holding that the Mardi Gras Parade immunity statute applies to contract causes of action, therefore, I dissent.
La.R.S. 9:2796, the immunity statute at issue in this case reads:
A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization which presents Mardi Gras parades or other parades, whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with pre-Lenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades, for any loss or damage caused by any member thereof or related to the parades presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization for his individual acts of negligence.
B. Any person who is attending or participating in one of the organized parades of floats or persons listed in Subsection A of this Section, when the parade begins and ends between the hours of 6:00 a.m. and 12:00 midnight of the same day, assumes the risk of being struck by any missile, whatsoever which has been traditionally thrown, tossed or hurled by members of the krewe or organization in such parades held prior to the effective date of this Section. The items shall include but are not limited to beads, cups, coconuts, and doubloons unless said loss or damage was caused by the deliberate and wanton act or gross negligence of said krewe or organization.
The jurisprudence interpreting this statute is scant, and does not resolve the unique issue of whether or not Zulu is immune from a suit arising out of an alleged breach of contract. Most of the cases that address La.R.S. 9:2796 answer the question of whether or not a particular tortious injury to a spectator was caused by gross negligence or willful and wanton conduct of a rider or krewe member. See, Orlando v. Corps de Napoleon, 96-991 (La.App. 5 Cir. 12/20/96), 687 So.2d 117; Trondsen v. Irish-Italian Parade Committee, 95-28 (La.App. 5 Cir. 5/10/95), 656 So.2d 694, writ denied, 95-1467 (La.9/22/95), 660 So.2d 476; Kibble v. B.P.O. Elks Lodge No. 30, 640 So.2d 267 (La.App. 4 Cir.1993), writ denied, 94-0922 (La.5/20/94), 641 So.2d 204. None of the cases address whether or not the immunity applies to damages arising out of a breach of contract, or if the statute is intended to protect krewes and organizations solely from injuries arising out of torts. Thus, the majority's holding in the instant case will have far-reaching effects on the interpretation of the Mardi Gras Parade immunity statute.
Plaintiffs argue that because the statute is found within Chapter 2, titled "Of Offenses *680 and Quasi-Offenses," the statute does not apply to contracts. Zulu argues that many types of immunity are found within that chapter which do not solely address torts. I do not find Zulu's or the majority's argument persuasive. The purpose of immunity statutes is to protect entities, usually governmental and not-for-profit organizations, from incurring liability associated with their own fault. The main purpose of La.R.S. 9:2796 is to protect krewes and organizations from suit by the thousands of spectators who attend Mardi Gras parades and risk injury because of the inherent nature of Mardi Gras parades, i.e. riders throwing objects into the crowd. Indeed, the legislative history reveals that the drafters were concerned with the increasing cost krewes and organizations were incurring for insurance. Moreover, the June 19, 1979, minutes of the House Committee of Civil Law and Procedure state, "This bill would grant tort immunity to krewes or organizations which present Mardi Gras parades..." (emphasis added). Lastly, common sense dictates that bestowing contract immunity on Mardi Gras krewes would go beyond the intended scope of the immunity statute because it would allow krewes to effectively avoid their contractual obligations, so long as they do not give the appearance of wanton or deliberate breaches or breaches that arise out of gross negligence. This certainly was not the intent of the legislature, which clearly intended this statute to grant tort immunity.
Furthermore, I believe the petition sufficiently states a cause of action in contract based on the theory of stipulation pour autrui. Plaintiffs argue that their claim for damages evolves out of the contract entered into by Fred Arceneaux with Zulu to participate in the parade. They claim they are the third-party beneficiaries of that contract.
The concept of a stipulation pour autrui is found in La.C.C. art.1978, which provides, "A contracting party may stipulate a benefit for a third person called a third party beneficiary." In order to establish a third-party beneficiary relationship, there must be a clear expression of intent to benefit the third party and the agreement must be in writing. Concept Design, Inc. v. J.J. Krebs & Sons, Inc., 96-1295 (La.App. 4 Cir. 3/19/97), 692 So.2d 1203, 1205-06; Homer Nat. Bank v. Tri-District Development Corp., 534 So.2d 154, 156 (La.App. 3 Cir.1988). Moreover, the third party relationship must form the consideration for a condition of the contract. As enunciated in the jurisprudence, the factors the court must consider are:
(1) The existence of a legal relationship between the promisee and the third person involving an obligation owed by the promisee to the beneficiary which performance of the promise will discharge;
(2) The existence of a factual relationship between the promisee and the third person, where (a) there is a possibility of future liability either personal or real on the part of the promisee to the beneficiary against which performance of the promisee (sic) will protect the former; (b) securing an advantage for the third person may beneficially affect the promisee in a material way; (c) there are ties of kinship or other circumstances indicating that a benefit by way of gratuity was intended.
J. Denson Smith, Third Party Beneficiaries in Louisiana: The Stipulation Pour Autrui, 11 Tul.L.Rev. 18, 58 (1936), quoted in, Dartez v. Dixon, 502 So.2d 1063, 1065 (La.1987); Andrepont v. Acadia Drilling Co., Inc., 255 La. 347, 358, 231 So.2d 347, 351 (1969); Tallo v. Stroh Brewery Company, 544 So.2d 452, 454 (La.App. 4 Cir.1989), writ denied, 547 So.2d 355 (La.1989).
Here, Arceneaux signed a written contract with Zulu to pay a certain sum in exchange for use of a Mardi Gras float during the Zulu parade. The petition unequivocally alleges that, "defendant entered into a contract which provided for the plaintiffs to participate as riders in the 1991 Zulu parade on Mardi Gras Day, February 12, 1991." This clearly states a cause of action in contract regardless of whether or not the contract is annexed to the petition, because "[w]hen it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence." Kuebler v. Martin, 578 So.2d 113, 114 (La.1991) (citations omitted).
*681 Moreover, the contract states that the float would be for the use of the float captain, Arceneaux, and "the other riders on his float ." Zulu clearly understood that Arceneaux would not be the lone rider of the float, rather, "other riders" would be joining him. Whitney Nat. Bank v. Howard Weil Financial Corp., 93-1568 (La.App. 4 Cir. 1/27/94), 631 So.2d 1308 (wherein this court held that stockholders were third party beneficiaries of a merger agreement between two corporations). Also, the obligation to provide a suitable float was solely undertaken by Zulu as promisor, not Arceneaux as stipulator.
Viewed in the context of the facts of this case, it is readily apparent that the legal relationship between Arceneaux and the other riders involved an obligation on the part of Arceneaux to provide a suitable float for his riders, which would be discharged if, in turn, a suitable float was provided by Zulu. Moreover, by securing the intended benefit for the riders, Arceneaux would also be materially benefited in that he would be able to participate in the parade as a Float Captain and possibly offset his costs. Therefore, the language of the contract between Zulu and Arceneaux contains a stipulation for the benefit of the riders. Furthermore, Zulu clearly manifested an intention to benefit the third parties as evidenced by the contract requirement that Arceneaux recruit riders to participate in the parade. In sum, there was a stipulation pour autrui because the unequivocal language of the Zulu-Arceneaux contract intended to confer a benefit onto the riders of the float.
Also, the majority opinion, in footnote three insinuates that the plaintiffs' cause of action really sounds in tort because the contract at issue was negligently breached. It has long been held that a contract can be breached through negligence. However, this has no effect on the underlying cause of action; a plaintiff can still maintain a contract cause of action. The case, Ridge Oak Development, Inc. v. Murphy, 94-0025 (La. App. 4 Cir. 6/30/94), 641 So.2d 586, 589, writ denied, 94-2565 (La.12/16/94), 648 So.2d 389, discusses at length the fact that "where a contract is breached by negligence, the party damaged may bring his suit either on breach of the contract or on the tort." Moreover, that case holds that when a special obligation is owed to a party, the action sounds in contract; whereas when a general duty is owed, the action sounds in tort. In the instant case, the duty that plaintiffs allege was breached was clearly a special obligationto provide plaintiffs with a suitable float for the parade. See also, Dubin v. Dubin, 25,996 (La.App. 2 Cir. 8/17/94), 641 So.2d 1036, 1040 (explaining that if a person, "negligently performs a contractual obligation, he has committed active negligence and thus an active breach of the contract.") Charia v. Hulse, 619 So.2d 1099, 1101 (La.App. 4 Cir. 1993) (discussing the right of a third party beneficiary to state a cause of action in contract for the negligent breach of a contract); Aetna Cas. and Sur. Co. v. Smith, 552 So.2d 708, 709 (La.App. 3 Cir.1989) (holding that the negligent breach of a lease gives rise to a breach of contract claim).
Thus, in sum, I strongly believe that plaintiffs' contract claim does not fall within the gamut of the immunity statute, which clearly should be limited to tort immunity. Mr. Arceneaux entered into a contract to rent a float from Zulu for the benefit of the other riders. The other riders were third-party beneficiaries of the contract between Arceneaux and Zulu. Thus, Zulu had a contractual duty to provide Arceneaux and his riders with a "customary float ... in the usual riding condition." Under La.C.C. art.1981, a stipulation pour autrui gives a third party beneficiary and a stipulator the right to demand performance from the promisor, which in turn clearly gives them the legal right to sue on the stipulation if it is breached. As such, plaintiffs should be entitled to present their claims to the trial court.
NOTES
[1] The plaintiffs in their petition make no reference to LSA-C.C.P. art.1998. However, the special event nature of the alleged contract is such that it could be said to be "intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss," as provided in the first paragraph of LSA-C.C. art. 1998. Therefore, if, but only if, plaintiffs state a cause of action in contract, they may have a claim for nonpecuniary damages.

The second paragraph of LSA-C.C. art.1998 provides for nonpecuniary damages where the contractual breach was "intended ... to aggrieve the feelings of the obligee." Plaintiffs make no allegation of any such intention in their petitions, and they raise no such argument in their brief.
[2] The petition makes the following allegations:

1. The defendant, Zulu Social Aid and Pleasure Club, Inc., is a Louisiana non-profit corporation which has its office in this parish. [Zulu cannot claim the benefits of LSA-R.S. 9:2796 unless it is a non-profit corporation. This allegation eliminates that issue.]
2. The defendant entered into a contract which provided for the plaintiffs to participate as riders in the 1991 Zulu parade on Mardi Gras Day, February 12, 1991.
3. Float # 17 was provided by the defendant to the plaintiffs for use in the 1991 parade. Three and one-half blocks into the start of the parade, the left rear tire, while the float was in motion and without warning, fell off the axle causing the float to pitch violently to the left and come to rest at a precarious angle on the street.
4. The plaintiffs were left on Jackson Avenue for several hours after the breakdown and had to take refugee [sic] in a church to avoid the crowds who had surrounded the stranded float removing and attempting to remove the plaintiffs' throws from the float.
5. There was no attempt to repair the float and allow for the plaintiffs to complete the parade. Due to negligent planning by the defendant, there were no repair tracks located in the middle or end of the parade to provide repair services.
6. Based on the defendant providing the plaintiffs with a defective float and negligent planning for potential breakdowns, the plaintiffs were denied their contractual right to participate in the 1991 Zulu parade.
The remaining allegations consist in the itemization of the plaintiffs' damages. Plaintiffs also filed an amended petition, but it served only to add an additional named party plaintiff. No documents or copies of contracts were annexed to either the original nor the amended petition.
[3] Interestingly, the acts of Zulu of which the plaintiffs complain, the "defective float and negligent planning," sound in tort.
[4] This is not a holding that a parading organization may not by contract agree to waive the benefits of the immunity afforded by LSA-R.S. 9:2796. Plaintiffs petitions do not raise the issue. Therefore, it was not considered as part of this appeal.