JgKUHN, J.
While Thomas Dude Savoy was driving a convertible in a Mardi Gras parade, a man grabbed some parade throws from the back seat. Mr. Savoy responded by exiting the car and physically confronting the man. During the confrontation, he sustained serious injury to his leg and foot. Mr. Savoy and his wife, Rita Savoy, filed this personal injury suit against: 1) Terre-bonne Men’s Carnival Club, Inc., d/b/a The Krewe of Hercules, the organization that presented the parade; 2) TIG Insurance Company, the Krewe’s alleged insurer; 3) Terrebonne Parish Consolidated Government (“the Parish”), the local governing authority; 4) Jerry Larpenter, the Sheriff of Terrebonne Parish (“the Sheriff’); and 5) Allstate Insurance Company, an insurer alleged to provide coverage to the owner of the car driven by Savoy.[2] Allstate filed a peremptory exception raising the objection of no cause of action. The Krewe, TIG, the Parish, and the Sheriff filed motions for summary judgment based on the deposition testimony of Mr. Savoy and others who had witnessed the incident. The trial court rendered judgment in favor of the defendants, dismissing all of the Savoys’ claims. The Savoys have appealed. We reverse that portion of the judgment sustaining Allstate’s exception but otherwise affirm.
I. FACTUAL AND PROCEDURAL BACKGROUND
The facts pertaining to the incident are largely undisputed. Savoy testified that *667 he was a member of a marching club that participated annually in the Krewe of Hercules parade held in Houma, Louisiana. During the February 1999 parade, Joe Champagne accompanied the marching club, driving his 1915 Pierce Arrow. Savoy rode in the car with him. Before the parade started, the men stowed their beads and other throws in the 13back seat of the car. Along the parade route, Champagne asked Savoy to drive the car so that he could exit the car to find a restroom. Later, when Savoy had stopped the car and was handing out beads, an unidentified man approached the car with a small child on his shoulders. Savoy handed the child some beads. Moments later, the man returned without the child, and Savoy saw him grab some of the parade throws from the back seat of the car. The man began cursing when he realized that Savoy had seen him take the throws. Savoy exited the vehicle to confront the man, and according to Savoy, the man continued cursing and was swinging punches at him. Savoy testified that he grabbed the man around his neck and walked towards the front of the vehicle. The man continued to strike Savoy while trying to break free from his grip. At some point, Savoy fell to the ground, sustaining injuries to his leg and foot. He was transported by ambulance to a nearby emergency room for treatment and underwent surgery the next day.
Richard Comeaux, who attended the Krewe of Hercules parade as a spectator, witnessed the incident involving Savoy from about 30 to 40 yards away. He had noticed the other man involved in the incident before the parade began. Comeaux described him as “very drunk [and] very obnoxious.” Comeaux also testified that before the incident with Savoy, this man had been “taunting the little girls in the band, and the police asked him to stop and warned him” but had not arrested him. Comeaux later witnessed the man grab beads from the back of the car and watched Savoy exit the car.
Mark Marchand also witnessed the incident from the parade sidelines. He saw the unidentified man ask for beads and recounted that when Savoy ignored him, the man got mad and stole a bunch of beads and took off running. Marchand described that Savoy got out of the car and caught the man about 20 feet in front of the car by grabbing him by the head. Then, he saw the men trip and fall to the ground, with other people in the crowd falling on top. As Marchand approached Savoy, another man had picked him up and was 14helping him walk. The man who had stolen the beads had escaped. Marchand also testified that he had seen the man acting rudely before the incident with Savoy.
Walter Safely, who attended the parade with Marchand, witnessed the unidentified man reach into the car to take more beads. He recalled that when the man ran away, Savoy jumped out of the car and chased him. Marchand stated that when Savoy reached the man, he put him “in a headlock and rode him down.” He described that the altercation took place 20 to 30 yards from the car.
Based on this evidence, the trial court concluded that: 1) the Sheriff and his officers were not negligent because they had violated no duty owed to Mr. Savoy; 2) the Krewe was not liable because La. R.S. 9:2796, which limits liability for losses connected with Mardi Gras parades and festivities, was applicable and because the Krewe had no duty to protect against the unforeseeable events that resulted in Mr. Savoy’s injury; and 3) no liability resulted from the Parish’s actions of erecting barriers in certain places along the parade *668 route.[3] The trial court also concluded that the Savoys failed to state a cause of action against Allstate. The Savoys have appealed alleging that the trial court erred in each of these findings.
II. ANALYSIS
A. The Motions for Summary Judgment
An appellate court reviews a trial court’s decision to grant a motion for summary judgment de novo, using the same criteria that govern the trial court’s consideration of whether summary judgment is appropriate. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730, 750. The summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2); Lee v. Grimmer, 99-2196 (La.App. 1st Cir.12/22/00), 775 So.2d 1223, 1225. The motion should be granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
The initial burden of proof is on the moving party. If, however, the moving party will not bear the burden of proof at trial on the matter before the court on the motion for summary judgment, and points out that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden at trial. La. C.C.P. art. 966(C)(2). If the nonmoving party fails to do so, there is no genuine issue of material fact, and summary judgment should be granted. Perry v. City of Bogalusa, 2000-2281 (La.App. 1st Cir.12/28/2001), 804 So.2d 895, 899.
1. Claims against the Krewe and TIG
The petition alleges that the Savoys’ injuries were caused by the Krewe’s failure to: 1) exercise proper supervision and control, 2) select the most safe and secure parade route, 3) warn participants of unreasonably dangerous conditions along parade route, 4) require the Sheriff and the Parish to provide pedestrian control barriers, and 5) require a sufficient number of officers to provide a sufficient presence of supervisory authority. The Savoys urge that the trial court erred in granting the motion for summary judgment filed by the Krewe and TIG based on the immunity provided by La. R.S. 9:2796.
At the time of the incident, La. R.S. 9:2796 provided:[4]
|(;A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization which presents Mardi Gras parades or other parades, whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with preLenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades, for any loss or damage caused *669 by any member thereof or related to the parades presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence.
B. Any person who is attending or participating in one of the organized parades of floats or persons listed in Subsection A of this Section, when the parade begins and ends between the hours of 6:00 a.m. and 12:00 midnight of the same day, assumes the risk of being struck by any missile whatsoever which has been traditionally thrown, tossed, or hurled by members of the krewe or organization in such parades held prior to the effective date of this Section. The items shall include but are not limited to beads, cups, coconuts, and doubloons unless said loss or damage was caused by the deliberate and wanton act or gross negligence of said krewe or organization.
The Savoys raise only one issue regarding the application of this immunity statute. They argue that the trial court interpreted the statute too broadly and that the immunity provided by the statute does not extend to all risks and losses associated with parading. They assert, rather, that the statute provides immunity from liability only when an item thrown from a float injures someone. In essence, the Savoys argue that the scope of the immunity provided in Subsection A should extend only to those damages that result from the risk identified in Subsection B, i.e., being struck by a Mardi Gras throw.
In Binkley v. Landry, 2000-1710, 811 So.2d 18 (La.App. 1st Cir.9/28/2001), writ denied, 2001-2934 (La.3/8/2002), 811 So.2d 887, a spectator was injured when a pickup truck left a parade route and struck a spectator. When a personal injury suit was filed on the spectator’s behalf against a non-profit krewe organization, this court determined that the immunity of Subsection A was applicable. The court generally found that the l7expansive language of La. R.S. 9:2796(A) was intended to cover a broad spectrum of risks and losses associated with parading. Binkley v. Landry, 811 So.2d at 22.
Further, the specific argument urged by the Savoys was considered and rejected in the case of Graves v. Krewe of Gladiators, Inc., 2001-0986 (La.App. 4th Cir.6/27/2001), 790 So.2d 155, wherein the court applied La. R.S. 9:2796 and found that a carnival krewe was immune from liability for the personal injury claims of a krewe member, who injured his finger on a makeshift ladder during a pre-parade party held on a carnival float. The court concluded that the immunity addressed in Subsection A of La. R.S. 9:2796 was not limited to the claims raised in Subsection B.
In reaching that conclusion, the Graves court quoted language from one of its earlier decisions, Gardner v. Zulu Social Aid and Pleasure Club, Inc., 98-1040 (La.App. 4th Cir.2/10/99), 729 So.2d 675, 678, writ denied, 99-0697 (La.5/7/99), 740 So.2d 1285, which employed basic statutory interpretation principles in interpreting the scope of the immunity of Subsection A:
To limit the effect of 9:2796 to damages sustained by onlookers who are injured by things thrown from floats would render 9:2796 A meaningless. Such damages are specifically covered by paragraph “B.” We must assume that the legislature would not have enacted 9:2796 A without some additional purpose. The expansive language in paragraph “A” referring to “any loss or dam *670 age related to parades” is intended to cover the broad spectrum of risks and losses normally associated with parading. ...
In concluding that the legislature intended this immunity to extend beyond the risk of injury caused by items thrown from floats, the Graves court found that the legislature enacted the immunity statute to assist carnival krewes and organizations that were having difficulty obtaining liability insurance for parade activities. Graves v. Krewe of Gladiators, Inc., 790 So.2d at 159.
When interpreting a law, a court must presume that every word, sentence or provision in the law was intended to serve some useful purpose, that some effect is to be | «given to each such provision, and that no unnecessary words or provisions were used. When possible, the court is bound to adopt a construction of the provision in question that harmonizes and reconciles it with other provisions. Bunch v. St. Francisville, 446 So.2d 1357, 1360 (La.App. 1st Cir.1984). If we were to adopt the Savoys’ interpretation of the immunity provided by La. R.S. 9:2796, we likewise find that Subsection A would be rendered meaningless.
Thus, applying the immunity statute to the present case, we conclude that the trial court properly determined that the risk of injury resulting from an altercation between a parade spectator and a parade participant is encompassed within the scope of the immunity addressed in Subsection A. Further, we conclude that the evidence presented by the Krewe in support of its motion for summary judgment establishes that the Krewe was an organization that presented a Mardi Gras parade, Mr. Savoy’s injuries were parade-related, and they were not the result of the Krewe’s gross negligence. Furthermore, notwithstanding the application of the immunity statute, we also agree with the trial court that any duty owed by the Krewe to Savoy did not encompass the risk of protecting him from injury that primarily resulted from his own physical aggression when encountering a parade spectator. There are no issues of material fact regarding these issues and the trial court properly concluded that the Krewe and its insurer, TIG, were entitled to judgment as a matter of law.
2. Claims against the Sheriff and the Parish
The petition alleged that the Sheriff and the Parish are liable because the area in question was not adequately patrolled by law enforcement officers and was not barricaded. On appeal, the Savoys allege that the record establishes a material issue of fact regarding whether the Sheriff or the Parish assumed a duty to control the crowd.
laMr. Savoy testified that although he thought a police car was in the procession in front of his marching group, he did not recall any law enforcement officers coming to the scene after he was injured. He also did not recall the presence of any barricades in the area where the confrontation occurred.
Comeaux testified that there were no barricades and no police officers stationed in the area. He acknowledged, however, that police officers had occasionally patrolled the area and that a police officer was stationed to the north of the area where he stood. Safely and Marchand also testified that no police officers had been stationed in the area where they stood but they were also aware that police officers were stationed in other areas along the parade route. Safely estimated that police officers arrived in the vicinity about five minutes after the incident.
*671 Law enforcement officers have a duty to act reasonably to investigate possible violations of the law and to protect citizens who may be harmed by a violation. Hardy v. Bowie, 98-2821 (La.9/8/99), 744 So.2d 606, 614. Thus, because law enforcement officers were stationed along the parade route, they had a duty to investigate disturbances as they arose along the parade route. But regardless of the methods and techniques employed by these law enforcement officers, they did not have a duty to ensure the safety of all persons in the parade crowd.
The record establishes that law enforcement officers were patrolling the area in question and that officers were stationed nearby. Comeaux’s testimony establishes that the officers had issued a warning to the man when they had earlier witnessed him being rude or offensive but the record does not establish that any officer actually witnessed the confrontation between Savoy and the parade spectator. Thus, the Savoys presented no evidence showing that any of the officers failed to properly respond to any violations of |inlaw. To defeat the motion for summary judgment, the Savoys needed to present such evidence to show that they could satisfy then-burden at trial.
And again, we recognize that whatever duty may have been owed by the Parish or the Sheriff to Savoy, as a parade participant, did not encompass the risk of injury resulting from his physically aggressive response to an unruly parade spectator.
We also find no liability arising from the failure to erect a barricade because, to do so, we would have to conclude that the Parish or the Sheriff was required to erect a barricade along the entire parade route. We find no basis for imposing such a duty.
The trial court properly concluded that there were no material issues of fact regarding the liability of either the Sheriff or the Parish and that they were entitled to judgment as a matter of law.[5]
B. Allstate’s Exception
On appeal, the Savoys argue that the petition states a cause of action because it alleges that Mr. Savoy’s injuries were sustained in connection with the vehicle. Allstate responds that the petition fails to allege any acts of omission and/or commission on its part and fails to state how Mr. Champagne was a responsible party in this incident.
A court of appeal reviews de novo a lower court’s ruling sustaining a peremptory exception raising the objection of no cause of action because the exception raises a question of law and because the lower court’s decision is generally based only on the sufficiency of the petition. City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, 756. The function of an objection of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1235 (La.1993). The burden of showing that the plaintiff has lufailed to state a cause of action is on the exceptor. City of New Orleans v. Board of Directors of Louisiana State Museum, 739 So.2d at 755.
For the purposes of determining the issues raised by the exception, the court must presume that the well-pleaded facts in the petition are true. Strasner v. State, 99-1099 (La.App. 1st Cir.6/23/2000), 762 *672 So.2d 1206, 1212-1213, writ denied, 2000-2195 (La.10/27/2000), 772 So.2d 125. No evidence may be introduced to support or controvert the peremptory exception raising the objection of no cause of action. La. C.C.P. art. 931. Thus, the court must determine whether plaintiff is legally entitled to the relief sought based on the facts asserted in the petition. Strasner v. State, 762 So.2d at 1213.
The Savoys’ petition sets forth factual allegations regarding the incident that transpired between Mr. Savoy and the unidentified parade spectator. And although the allegations of the petition do not specify the type of policy that Allstate issued to Champagne, the petition generally alleges that Allstate provided insurance coverage to the Champagne vehicle “which covered the incident” that forms the basis of this suit. We cannot assume that the coverage provided by this policy would provide coverage for only injury that results from Mr. Champagne’s liability because the allegations of the petition do not establish the type of policy that is involved or the scope of its coverage. While we cannot contemplate any particular policy language that would provide coverage for the incident described in the petition, we find that the petition states a cause of action based on its allegation of coverage. We recognize there is a vast amount of jurisprudence interpreting various types of insurance coverage and analyzing whether certain conduct arises out of the “use” of a vehicle. But the analysis in these cases hinges on the particular language of the policies being interpreted. In this case, we cannot consider policy language in resolving whether the petition states a cause of action. Thus, this body of jurisprudence is not determinative.
haBased on the current posture of this case, we are compelled to reverse that portion of the trial court’s judgment, which sustained the peremptory exception raising the objection of no cause of action and dismissed the Savoys’ claims against Allstate. We note that Allstate could likely have been successful in challenging this suit if it had filed a motion for summary judgment and introduced its policy. If Allstate had used that procedure, the trial court could have analyzed the policy language and made a conclusive determination regarding insurance coverage.
III. CONCLUSION
For these reasons, that portion of the trial court’s judgment which sustains Allstate’s exception and renders judgment in favor of Allstate is reversed. Otherwise the judgment is affirmed. One-half of the appeal costs is assessed against the Savoys and the other half is assessed against Allstate.
REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.

. Originally, plaintiffs had also named the Terrebonne Parish Sheriffs Office as a defendant but later amended their petition and excluded this defendant. In an amending petition, plaintiffs also named XYZ Insurance Company, an unidentified insurer believed to provide liability insurance coverage to Lar-penter, as a defendant. This party was never identified and is not pertinent to this appeal. Mrs. Savoy alleges that she has lost the love and affection of her husband and has suffered mental anguish.

. The trial court found that the Parish was immune based on La. R.S. 9:2798.1, which provides that public entities and their officers are immune for discretionary acts performed within the course and scope of their lawful powers and duties.

. Amendments to the language of Subsection A, enacted pursuant to Acts 1999, No. 1264, § 1 and Acts 2001, No. 504, § 1, are not pertinent to this appeal.

. Based on our analysis, we pretermit a discussion of the applicability of La. R.S. 9:2798.1.