CHARLES R. JONES, Judge.
|, The appellants, Daisy Johnson Palmer and her husband Alfred M. Palmer, (the Palmers) seek review of a district court judgment which granted the motion for summary judgment of the named defendants/appellees: Zulu Social Aid and Pleasure Club, the T.H.E. Insurance Company, Namaan C. Stewart, and ABC Insurance Company. We Affirm.
This action arises out of an incident which occurred on Tuesday, February 28, 2006, Mardi Gras Day, at about noon.
Mrs. Palmer, a retired Orleans Parish public school teacher, was a spectator in a crowd watching a Zulu parade at Canal & Dauphine Streets in New Orleans, accompanied by her husband, Mr. Palmer. Suddenly, a float rider, Mr. Stewart, allegedly threw five coconuts in quick succession, and one allegedly struck Daisy Palmer in the left side of her head, while she was looking for the next float in succession of the parade.
As the result of the subject incident, Mrs. Palmer sustained personal injuries which included a laceration of the forehead at the eyebrow, bleeding, as well as treatment for anxiety, depression, a loss of interest in Mardi Gras, and nightmares of coconuts striking her.
|j>The incident was captured by two videos, one recorded by Mr. Palmer; the second was recorded by a bystander, Mr. Bruce Welk, from Lewisville, Texas. Mr. Welk’s video clearly captures the float rider throwing five coconuts in quick succession, toward the front of the float. Mr. Welk dubbed this the “Coconut Artillery.” The other DVD, that is, the Palmers’ video, shows the float rider, Mr. Stewart (Mr. *133 Stewart), wearing a sash bearing his name, and the audio captures a spectator yelling “Namaan, Namaan.”
The Palmers filed suit the against the named appellees, Zulu Social Aid and Pleasure Club, the T.H.E. Insurance Company, Mr. Stewart, and ABC Insurance Company, seeking damages for injuries sustained by Mrs. Palmer via the alleged negligent acts of Mr. Stewart, his insurer, the Zulu Social Aid and Pleasure Club and its insurer. After discovery, the appellees filed motions for summary judgment.
At the hearing on the motion for summary judgment, the district court granted the motions for summary judgment, dismissing Zulu Social Aid & Pleasure Club, Inc., T.H.E. Insurance Company, and Mr. Stewart from the lawsuit, via judgment dated on February 17, 2009. Aggrieved by the judgment, this timely appeal followed.
By their sole assignment of error, the Palmers argue that district court erred manifestly[1] in improperly ruling that:
1. Zulu is entitled to summary judgment, and;
2. The Palmers are unable to establish gross negligence on the part of defendants as a matter of law, citing to La. R.S. 2796.
| oThis Court reiterated the standard of review on a motion for summary judgment as follows:
Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish Nat’l Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)). An appellate court reviews a district court’s decision granting summary judgment de novo, using the same standard applied by the trial court in deciding the motion for summary judgment. Schmidt v. Chevez, 00-2456, p. 4 (La.App. 4 Cir. 1/10/01), 778 So.2d 668, 670. Under this standard, summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(B).
Sanchez v. Harbor Const. Co., Inc., 2008-0316, pp. 3-4 (LaApp. 4 Cir. 10/1/08), 996 So.2d 584, 587.
The Palmers argue that Mr. Stewart’s action of throwing coconuts from the float was done without “want of even slight care and diligence.” The Palmers assert that if such actions were not negligent, then why would Zulu Social Aid and Pleasure Club have rules expressly forbidding such behavior. In support of their argument that Mr. Stewart was negligent, the Palmers point to the rules found at Appendix II, All Float Riders, and Appendix III, Zulu Rules 10-21, which read in pertinent part as follows:
Do not toss throws to the front or rear of floats, or in the formation or disbanding areas.
[[Image here]]
The throwing of coconuts during the Zulu parade is positively forbidden. Coconuts will only be given out hand to hand.
|4The Palmers argue that the best evidence of negligence can be plainly seen in *134 the two DVDs admitted in the record in which, they contend, Mr. Stewart can be seen throwing five coconuts into the crowd. One of these coconuts purportedly hit Mrs. Palmer in the back of the head.
Because of this videotaped evidence, the Palmers argue that it is reasonably foreseeable that throwing that number of coconuts in that manner is dangerous and reckless behavior.
The Palmers note that the district court relied on Ambrose v. New Orleans Police Department Ambulance Service, et al., 93-3099, 639 So.2d 216 (La.1994),[2] to define gross negligence “as the want of even slight care and diligence, and an entire absence of care and amounts to wanton or reckless behavior.” Ambrose, 639 So.2d at 219 citing State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942). However, the Palmer’s maintain that the district court’s findings were incorrect.
To distinguish Ambrose, the Palmers cite Brown v. Lee, 929 So.2d 775 (La.App. 4 Cir. 4/5/06). In Brown, a spectator at the Mardi Gras Day Zulu parade filed suit against a Zulu Club member for being hit in the face by a coconut thrown in an overhand fashion from a parade float. The coconut was allegedly thrown a considerable distance from the Mardi Gras float as the float, in the Zulu parade, was turning-a corner. Ms. Brown was hit in the face, rendered momentarily unconscious, and was treated at an emergency room shortly after the incident. J^After seeking treatment post incident due to recurrent pain in the injury location, she was diagnosed with an orbital fracture.[3]
Ms. Brown filed suit alleging that Mr. Lee, the rider who threw the coconut to her, was grossly negligent in throwing a coconut in an overhand manner “a distance approximately equivalent to one and a half times the length of a large automobile.” Ms. Brown sought to hold Mr. Lee, Zulu, and its insurer liable for her injuries. Id., p. 2, 929 So.2d at 776.
In support of the motion for summary judgment, Mr. Lee submitted an affidavit stating that he was attempting to give Ms. Brown a coconut, because he recognized her as an acquaintance. Id., p. 2, 929 So.2d at 776-777. He further stated in his affidavit that he never intended to harm Ms. Brown. Id., p. 2, 929 So.2d at 777. Additionally, an affidavit was executed on behalf of the Zulu organization by its president. In that affidavit, which was also submitted in support of the motion for summary judgment, the President of the Zulu organization stated that at the time of the alleged incident, Zulu Social Aid and Pleasure Club was staging a Mardi Gras parade pursuant to a permit issued by the City of New Orleans. He also stated that the Zulu organization only allows coconuts *135 to be handed, not thrown, to spectators at its parades.
The district court determined that the defendants would not be liable to Ms. Brown even if she were able to prove all of her allegations, because the district court found that the defendants were exempt from liability under La. R.S. 9:2796, | fiaIso referred to as the Mardi Gras Immunity Statute (MGIS). Ms. Brown appealed.[4]
On appeal, this Court held that the contention of the parties[5] presented a material issue of fact, and that it was clear that wanton and grossly negligent acts of members of parading organizations are not included within the grant of immunity of La. R.S. 9:2796. Id. We stated:
Unlike the trial court, we believe that throwing a coconut in the manner Mrs. Brown contends it was thrown constitutes gross negligence. We believe that throwing a hard, heavy object, such as a coconut, at someone in a crowd of people equal to the length of one and one-half cars, in an overhead manner, demonstrates the want of even slight care and diligence, that is the very definition of gross negligence. The Zulu organization prohibits members from throwing coconuts into a crowd, and only permits its members to disseminate coconuts to parade spectators by handing them to the intended recipient. If Mr. Lee did not follow the rules of the Zulu organization with respect to distributing coconuts along the parade route, and instead threw a coconut in Mrs. Brown’s direction in the manner alleged by her, he was grossly negligent. If, on the other hand, Mr. Lee handed the coconut that hit Mrs. Brown in a manner that was not grossly negligent, then he is shielded from liability by the provisions of the statute. We find a genuine issue of material fact.
Id., p. 2, 929 So.2d at 776-777.
In the matter sub judice, the Palmers also argue that Mr. Stewart’s actions were “more egregious than what the float rider did in the Brown case.” Although they acknowledge and recognize that Zulu makes an important contribution to the |7New Orleans community, and that it is a genuine Mardi Gras attraction, they note Mr. Stewart’s acts violated Zulu’s own rules.
The Palmers also maintain that in determining whether an issue is genuine, courts cannot consider the merits, make credibility determinations, evaluate testimony or weigh evidence on a motion for summary judgment. Furthermore, the Palmers note that the appellees had previously filed a motion for summary judgment while the matter was before the district court. They note that the prior motion for summary judgment was denied, and in its reasons, the district court noted:
Both sides submitted DVDs of the incident. After reviewing the footage, the court is of the opinion that a genuine issue of material fact exists as to whether the coconuts were thrown in a manner that would constitute gross negligence.
In addition, the Palmers pose the rhetorical question “how can this not be gross negligence where Mr. Stewart throws five coconuts in quick succession into a crowd from the rear of the float, all in contraven *136 tion of Zulu’s own rules?” They argue that the rules are in place for a reason. They assert: first, if you throw five coconuts in quick succession, someone in the crowd is likely to get hit; and second, throwing from the back of the float is intended for the idea that once the float passes, spectators direct their attention to the next float in the parade procession. The Palmers assert that this exactly is what happened to Mrs. Palmer. They not that as Mrs. Palmer turned her attention from the float which had just passed and she was hit in the side of the face while looking for the parade float.
The appellees argue that neither of the videos/DVDs relied on by the Palmers depict Mrs. Palmer actually being struck. In fact, there is no evidence she was actually struck. Additionally, the Appellees’ characterize the video made by |sBruce Welke (identified as one of the videographers) as not supported by the record in this matter. The appellees note that Mr. Welke has never been deposed and the record is void of any testimony by him. Hence, the ap-pellees assert that any reference or characterization regarding Mr. Welke, other than merely as a videographer, should be stricken.
Mrs. Palmer claims to have never seen the coconut which struck her and cannot say whether it was thrown by Mr. Stewart. Despite being surrounded by people calling Mr. Stewart’s name for coconuts, and being specifically aware that several coconuts had been thrown and were airborne and headed in her direction, she did not try to catch them, nor did Mrs. Palmer take cover. Rather, she turned her attention away from the thrown coconuts (while they were in the air) to look behind the float to see what may be coming next.
In particular, the appellees rely upon the testimony of Mrs. Palmer herself, as follows:
Q. Okay. And you saw the coconuts in the air that are on this DVD?
A. Yes.
Q. Okay. And you decided or made whatever judgment you made that you didn’t need to do anything, and you tuned your attention elsewhere before you knew where they were going to land?
A. I figured I was far back. I just, you know, just was in the back. I had no idea a coconut would come-you know, strike me back there.
The appellees note that the very videos sought to be relied upon by the Palmers nevertheless establish that Mrs. Palmer is m front, next to the barricades, as opposed to “in the back.” After reviewing the video again during her deposition, Mrs. Palmer ultimately conceded that she was in the front next to the barricade:
|aQ. Did you see where it looked like you were against, you know, up against the barricade, rather, or near the barricade?
A. Yes.
Q. And you’re saying that was not your location at the time you complain of versus after?
A. I recall holding the barricade after I was struck. I think I kind of leaned against the barricade, but — .
Mrs. Palmer’s contention that her attention was turned away (to the next float in line) after Mr. Stewart had lobbed the coconuts is also suspect after reviewing the DVD:
Q.... And if the cameraman was behind you, as you’ve indicated both your husband and the Texas gentleman were, then you would have been-they [the coconuts] would have been coming in your direction or not?
A. I don’t know how to respond to that.
*137 Q. Well, I’m afraid I’m entitled to an answer.
A. It would seem that way.
Q. In which case, you would think that you would have continued to watch the coconuts coming, right?
A. No.
Q. Well, you agree that neither DVD shows anything coming directly behind the float. Will you agree with that?
A. Yes.
Q. So there was nothing to turn your head away, at least to the right, correct, or behind the float?
A. Not in that, from the film, from the DVD.
1 ^Furthermore, the appellees argue that it was also revealed during the course of Mrs. Palmer’s deposition that she has suffered from glaucoma, a degenerative eye condition which destroys the optic nerve, for over twenty (20) years.
Although the Palmers contend the throwing of the coconut underhand was somehow extreme and outrageous conduct, their impression was much different at the time of the incident. Both even agreed that, given the circumstances, Mr. Stewart’s actions were reasonable. The appel-lees note that Mr. Palmer testified:
Q. You would agree that the direction that the coconuts are lobbed or tossed underhanded, in an underhanded manner, are in the direction of the crowd and people in the crowd around you, saying either the name or asking for a coconut or what have you?
A. Yea, I would agree to that.
Q. Okay. And that was the — You would agree that that was the logical response for the float rider, such as Mr. Stewart, to try to accommodate or appease the people?
A. I would agree to that, too. Further, neither plaintiff believed that Mr. Stewart was intentionally trying to hurt anyone, or had any ill will toward the plaintiff.
In 2004, the Krewe of Zulu took voluntary steps, despite the statutory grant of immunity, to increase parade-goer safety by adopting the use of “lightweight” coconuts in its parades. The new lightweight coconuts, which consist of only the shell, weigh only four (4) to five (5) ounces each. The use of these coconuts was first adopted in the 2005 parade.
The appellees note that the original or “traditional” type coconuts were regular, full coconuts which were simply purchased from local produce suppliers or grocery stores. The coconuts were shaved and decorated, but they were not h followed out. The appellees note that these traditional coconuts were the ones being used at the time the MGIS was amended in 1987 to provide immunity for the hurling of coconuts.
Louisiana R.S. § 9:2796, entitled Limitation of liability for loss connected with Mardi Gras parades and festivities; fair and festival parades, expressly grants a limitation of liability for loss connected with Mardi Gras parades, and provides in pertinent part:
A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization, any group traditionally referred to as Courir de Mardi Gras, or any member thereof, which presents Mardi Gras parades, including traditional rural Mardi Gras parades, processions, or runs in which participants ride on horseback, march, walk, or ride on horse drawn or motor drawn floats, or wheeled beds, or other parades, *138 whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with pre-Lenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under the laws of this state, or any member thereof, which sponsors fairs or festivals that present parades or courirs, for any loss or damage caused by any member thereof, during or in connection with or related to the parades or courirs presented by such krewe or organization, unless said loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization, or any member thereof 112as the case may be, or unless said member was operating a motor vehicle within the parade or festival and was a compensated employee of the krewe, organization, or courir. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence.
We note that in its reasons for judgment, the district court concluded that La. R.S. § 9:2796 grants a limitation of liability for loss connected with Mardi Gras parades, relying upon Ambrose v. New Orleans Police Department Ambulance Service, et al, 639 So.2d 216 (La.1994), as controlling. Particularly, the court indicated,
Gross negligence has been defined as “want of even slight care and diligence’, ‘entire absence of care’, and amounts to wanton or reckless behavior.
The court finds from all of the facts and evidence presented, that plaintiffs are unable to establish negligence on the part of defendants as a matter of law, and therefore plaintiffs have no cause of action against defendant, pursuant to La. R.S. 9:2796.
This Court has recognized in Gardner v. Zulu Social Aid and Pleasure Club, 98-1040 (La.App. 4 Cir. 2/10/99), 729 So.2d 675, that it can be assumed that the legislature weighed the public utility of Mardi Gras parades against the risks ordinarily associated -with these events (such as being struck by thrown, tossed or hurled coconuts) in enacting La. R.S. 9:2796. We went on to hold that “the immunity granted by La. R.S. 9:2796 represents a decision by the legislature that the public utility of Mardi Gras parades outweighs the risks normally associated with such events.” Id., 98-1040, p. 7, 729 So.2d at 679.
Further, in Graves v. Krewe of Gladiators, Inc., 01-0986 (La.App. 4 Cir. 6/27/01), 790 So.2d 155, this Court recognized that the legislature’s intent was to protect Mar-di Gras krewes from liability because of the high cost of obtaining | ^insurance. Id., p. 8,790 So.2d at 159. This Court further stated that “the legislature took into account that parade organizations need relief from high insurance rates or from the failure to obtain any insurance based on claims concerning parade festivities that were not caused by the deliberate and wanton act of gross negligence of the krewe/organization.” Id.
In this case, there is no indication that the Palmers have met their burden in establishing that Mr. Stewart threw coconuts in a way that was negligent or foreseeably injurious to a spectator. Additionally, our review of the record does not establish that any genuine issues of material fact exist as to the negligence of Mr. Stewart because La. R.S. 9:2796 grants immunity to the defendants.
While the Palmers rely on Brown v. Lee, infra, for the contention that immunity does not attach to the appellees, Brown is *139 clearly distinguishable in that Ms. Brown suffered a severe injury of her eye socket. Further considering that the plaintiff in Brown, had independent witnesses who both saw the distance from which the coconut was hurled, and the reckless and wanton manner it was hurled through the air, and further considering the fact that incident in Brown took place before the “new coconuts” were used by the Krewe of Zulu, the matter sub judice is quite different.
Our review of the two short videos of the incident, taken by Mr. Palmer and Mr. Welke, reveal that Mrs. Palmer was standing at the front of the crowd next to the police barricade. Mr. Stewart’s name, can be heard being called out by several people surrounding Mrs. Palmer. Mr. Stewart allegedly threw a coconut to the crowd in the direction of the person calling his name. However, upon viewing the video, it is not apparent that the coconut was thrown in an underhanded manner towards the crowd behind the barricades.
11.[The videos do not show Mrs. Palmer being struck by a coconut, much less establish that a coconut thrown by Mr. Stewart struck Mrs. Palmer. Mr. Stewart has testified specifically that he did not throw the coconut which struck Mrs. Palmer. The Palmers clearly have not met their burden in establishing that they can defeat the motion for summary judgment. Furthermore, it is generally held that,
[A] motion for summary judgment will be granted “if the pleadings, depositions, answers to interrogatories, and admissions on file, together "with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La.Code Civ. P. art. 966(B). Pursuant to this article, the burden of producing evidence at the hearing on' the motion for summary judgment is on the mover (normally the defendant), who can ordinarily meet that burden by submitting affidavits or by pointing out the lack of factual support for an essential element in the opponent’s case. At that point, the party who bears the burden of persuasion at trial (usually the plaintiff) must come forth with evidence (affidavits or discovery responses) which demonstrates he or she will be able to meet the burden at trial. Once the motion for summary judgment has been properly supported by the moving party, the failure of the non-moving party to produce evidence of a material factual dispute mandates the granting of the motion.
Cyprien v. Board of Sup’rs ex rel. University of Louisiana System, 2008-1067, p. 5 (La.1/21/09), 5 So.3d 862, 866, 243 Ed. Law Rep. 991 (citing Wright v. Louisiana Power & Light, 06-1181 (La.3/9/07), 951 So.2d 1058; Babin v. Winn-Dixie Louisiana, 00-0078 (La.6/30/00), 764 So.2d 37.)
Hence, based on our review of the foregoing, we find that the Palmers’ assignment of error is without merit.

DECREE

Accordingly, the judgment of the district court is affirmed.

AFFIRMED.

McKAY, J., Dissents.

. This Court notes that on appeal, a motion for summary judgment is subject to a de novo review, not a manifest error review.

. In Ambrose, 639 So.2d 216 (La.1994), a wrongful death and survival action was filed against the New Orleans Police Department and emergency medical technicians (EMT) asserting gross negligence which purportedly reduced a heart attack victim’s chance of survival. The district court entered a verdict in favor of survivors. Both parties appealed. The Court of Appeal, 627 So.2d 233, affirmed. The City of New Orleans and EMTs sought writ of certiorari. The Supreme Court, granted the writ and held that: (1) erroneous jury charges did not dispense with clearly wrong standard of review; Id., 639 So.2d at 220, (2) EMTs' failure to take stretcher to victim and instead making victim walk, assisted by two adults, to stretcher was not "gross negligence”; Id., 639 So.2d at 222, and (3) that EMTs spent 20 minutes at victim's house before leaving with victim rather than 10 to 12 minutes as suggested by expert was not "gross negligence.” Id., 639 So.2d at 223.

. In Brown, the plaintiff suffered an orbital fracture which is a break in one of the bones of the eye socket.

. Ms. Brown did not appeal the summary judgment granted in favor of Zulu or its insurer. She did, however, appeal the summary judgment in favor of Mr. Lee, because she asserts that her injuries were the result of his gross negligence.

. Particularly, this was the conclusion as to whether the Zulu parade crewmember’s act of throwing the coconut was negligent.