ROSEMARY LEDET, Judge.
11 This is a personal injury suit arising out of an injury that allegedly occurred as a result of the throwing of a bag of beads at the 2012 Endymion Extravaganza.[1] Rose Ann Citron and her husband, Wayne Citron, filed this suit against Gentilly Carnival Club, Inc., d/b/a/ Krewe of Endymion (the “Endymion Krewe”). After conducting discovery, the Endymion Krewe filed a motion for summary judgment asserting immunity under La. R.S. 9:2796, the Mardi Gras immunity statute.[2] From |2the trial *307 court’s decision granting the Endymion Krewe’s motion for summary judgment and dismissing the suit, the Citrons appeal. For the reasons that follow, we affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The underlying facts in this case are virtually undisputed. On February 18, 2012, the Saturday before Mardi Gras, the Endymion Krewe’s parade rolled through the streets of the City of New Orleans. The parade ended by making a loop through the Superdome — the venue for the 2012 Extravaganza. Mr.' Citron, then a long-term (over thirty year) 'Endymion member, rode on one of the floats in the parade; after riding in the parade, he attended the Extravaganza.
Mrs. Citron likewise attended the Extravaganza. This was not Mrs. Citron’s first time attending the Extravaganza. During the thirty year period that her husband had been an Endymion Krewe member, Mrs. Citron attended the majority of the Extravaganzas. She thus knew that the Krewe members continued to throw beads when the parade made its loop through the Superdome.
When the parade was making its loop through the Superdome on February 18, 2012, Mrs. Citron allegedly was hit in the head by a bag of beads. | ^Seeking to recovery for the injuries they allegedly sustained as a result of the accident, the Citrons filed this suit against the Endymion Krewe.[3] In their petition, the Citrons alleged the accident occurred as follows:
[Mrs.] Citron was sitting and listening to music at the Endymion Extravaganza when she was struck in the head by a large bag of Mardi Gras beads thrown overhand by one of the masked riders on float number 7. The beads in the bag (which contained twelve strands of beads) were oversized and unusually heavy. The bag of beads struck Mrs. Citron in the face, injuring her forehead, nose, cheeks, mouth and eyes. Mrs. Citron suffered a concussion and immediately lost consciousness. A doctor who was dining with Mrs. Citron assisted in taking her to the first aid station in the Superdome. The responders at the first aid station obtained an ambulance for her, and she was transported to Tou-ro Hospital Emergency Room.
In their petition, the Citrons further alleged that the Endymion Krewe was liable — both in its capacity as a krewe or an organization and vicariously for its krewe *308 member’s actions — for the following reasons:
[Mrs.] Citron avers that her “loss or damage was caused by the deliberate and wanton act or gross negligence of the krewe or organization!.]” La.Rev. Stat. 9:2796(A). Endymion willfully and knowingly permits its members to throw full bags of beads overhand in a space where people are seated, eating, and enjoying musical entertainment. Endymion’s board is fully aware that this conduct could result in serious injury to attendees of the Extravaganza. Moreover, because Endymion requires its riders to be masked making identification of the individual tortfeasor impossible, Endymion must be liable for the conduct of its members. For both reasons, La. Rev.Stat. 9:2796(A) is not applicable to the facts of this claim. Accordingly, Endymion is liable under Louisiana tort law for the injuries caused to Ms. Citron by virtue of their negligence and gross negligence.
In its answer, the Endymion Krewe averred that “each Member of the Krewe of Endymion receives two tickets to the Extravaganza, which Extravaganza begins Lprior to and continues throughout the parade and the limitation of liability and assumption of risk is printed on the back of the ticket used to gain entry to the event.” The Endymion Krewe also asserted the affirmative defenses of comparative fault of Mrs. Citron or third parties and immunity from liability under the Mardi Gras immunity statute, La. R.S. 9:2796.
Following discovery, the Endymion Krewe filed a motion for summary judgment based on La. R.S. 9:2796. In its motion, the Endymion Krewe argued that, regardless of the alleged acts of an unidentified float rider, the Endymion Krewe itself committed no acts that reasonable minds could characterize as gross negligence so as to defeat the immunity provided to it by La. R.S. 9:2796.
In support of its motion, Endymion offered the affidavit of Charles Emile “Pep-pi” Bruneau, Jr., a member of the Endymion Krewe’s executive committee, who attested as follows:
• Endymion is the sponsor of the annual Krewe of Endymion carnival parade on the Saturday preceding Mardi Gras Day, in New Orleans, Louisiana.
• Endymion was established to participate in pre-Lenten festivities by providing the residents and visitors to the City of New Orleans with a traditional Mardi Gras parade during the carnival season, including the parade presented on February 18, 2012.
• Prior to each year’s parade, Endymion distributes to its members several pieces of literature explaining general member information, guidelines imposed by Endymion for safety during the parade, and City ordinances regarding the proper conduct of parade participants. This same information was distributed to the membership prior to the 2012 Endymion parade.
• On the reverse side of each ticket provided to every member and guest, the following language is set forth:
The holder hereof who ⅛ attending the function specified on this ticket hereby assumes all risk and danger incidental to Mardi Gras parades and festivities, including specifically but not limited to the risk of being struck by any missile whatsoever which has been [fitraditionally thrown, tossed, or hurled by members of the krewe in the parade at this function, including but not limited to beads, cups, fris-bees, doubloons, trinkets and other favors, and agrees to hold the krewe and the members thereof harmless from any damage in connection there *309 with. Said holder further acknowledges that the liability of this krewe and the members thereof in connection with any such loss or damage is limited by and in accordance with the provisions of Louisiana Revised Statutes 9:2796.
A copy of an Extravaganza ticket (dated 1996) was attached to Mr. Bruneau’s affidavit.
A copy of the Endymion Krewe’s 2012 “Krewe Conduct & Safety Policy” (the “Krewe Safety Policy”) also was attached to Mr. Bruneau’s affidavit. The Krewe Safety Policy stated that Endymion Krewe members are strictly prohibited from engaging in, among other things, the following activities:
• Hurling of objects at parade viewers. (The rider should throw things to parade viewers, not at them.).
• Utilization on, or throwing from, the float of projectiles such as silly string, confetti cannons, spears, swords and other sharp pointed objects, or any other object [or] item that may cause harm or injury to riders and/or parade viewers.
In its statement of undisputed material facts, the Endymion Krewe reiterated the attestations set forth in Mr. Bruneau’s affidavit, set forth above, and added the following two additional facts:
[1.] Plaintiff, Rose Ann Citron, was at the table of Heidi Guillot at all times hereto, immediately prior to and when she was struck by beads, which table was in the proximity of the railing where the parade passes through the Super-dome at the Endymion Extravaganza.
[2.] Plaintiff, Rose Ann Citron, cannot identify the rider on a float who threw any beads that struck her during the 2012 Endymion Extravaganza.
The Endymion Krewe also offered in support of its motion the deposition testimony of Mrs. Citron and Ms. Guillot; and the La. C.C.P. art. 1442 deposition | ^testimony of Mr. Bruneau and Dan Kelly, the Endymion Krewe’s president.[4] Opposing the motion, the Citrons offered excerpts from Mrs. Citron’s and Ms. Guillot’s depositions and Mr. Bruneau’s and Mr. Kelly’s La. C.C.P. art. 1442 deposition. The Citrons also offered Mrs. Citron’s medical records, general information from learned treatises about coconuts, and the 2012 parade route.
From the deposition testimony, the following additional facts can be gleaned. In 2005, Mrs. Citron’s daughter was queen of Endymion; and Ms. Guillot’s daughter was a maid in the court. As a result of their daughters being in the same court, Mrs. Citron and Ms. Guillot met and became friends. At subsequent Endymion Extravaganzas, Mrs. Citron routinely went to Ms. Guillot’s table to watch the parade. Ms. Guillot’s table always was located in closer proximity than Mrs. Citron’s table to the parade route on which the floats passed through the Superdome.
Mrs. Guillot explained that her table for the Extravaganza was always located either right on, or one table back from, the railing that separates the tables form the parade route in the Superdome. Although Ms. Guillot generally had food and drinks on her table, she was fanatical about placing the food, drinks, and majority of other items under the table, or completely covering the items, when the parade passed through the Superdome. The reason she took these steps, she explained, was because of the high volume of beads and other items thrown from both directions, in *310 the area where her table was located. Indeed, she described the area where her table was located as a “war zone.” She further testified that the |72012 Extravaganza was no different from the prior years in terms of the volume of beads and other items thrown in the area where her table was located.
■ On the day of the accident, Mrs. Citron testified that when the parade began passing through the Superdome, she walked to the table at which Ms. Guillot was seated.[5] From that location, Mrs. Citron and Ms. Guillot watched part of the parade together. Both of their husbands were riding on one of the floats that were in the beginning of the parade. When float number seven was in front of the table, Mrs. Citron stood up from the table and said goodbye; her intention was to return to her table because she knew that the float riders would be coming in soon. As Mrs. Citron turned to leave the table, she testified that she was struck in the head by a bag of beads. Although she temporarily lost consciousness, she was able to save one of the beads from the bag that hit her. She explained that she remembered the beads hitting her and that she grabbed onto one of the beads.
Insofar as where the beads came from, Mrs. Citron testified that she “understood they came from the upper deck.” She explained that she recollected people saying or telling her that the beads were ■ thrown from high above. She, however, acknowledged that she did not see the bag of beads leave someone’s hands on float number seven and that she did not observe the beads at any time before they struck her. When asked how many sets of beads were in the bag, she answered that she did not see all of them. She explained that the bag of beads “must have broken [partially] in flight and partially when it hit me.” She thus did |snot know if it was five, six, or twelve beads in the bag. She described the bead she saved as “medium sized.” As to whether she knew how much the bag of beads weighed, she responded in the negative. •
Ms. Guillot confirmed that Mrs. Citron came to her table to watch the parade with her. Ms. Guillot, however, testified that she did not witness Mrs. Citron get hit with the beads because she had walked away from the table when the accident occurred. She estimated that she was away from the table for about ten minutes. When she returned to her table, a couple of her guests were assisting Mrs. Citron, who was seated on either a cooler or a chair. Ms. Guillot’s guests told her that Mrs. Citron had been hit by some beads and requested that Ms.-Guillot go find Mrs. Citron’s husband.
According to Ms. Guillot, the exact details about what happened were that “she [Mrs. Citron] was hit by beads and it knocked her over.” Ms. Guillot testified that she did not think it was unusual or suspicious that Mrs. Citron was knocked over; rather, Ms. Guillot replied “you get hit at Mardi Gras parades. I mean, I’ve been hit before.” Nor did anyone mention to Ms. Guillot that Mrs. Citron was hit by a “whole pack of heavy gauge beads.” Indeed, Ms. Guillot testified that she was unsure if anyone said that night that Mrs. Citron was hit with a pack of beads or if that was what she assumed. Ms. Guillot further testified that she was not shown *311 the beads that struck Mrs. Citron; she remarked: “[t]here’s hundreds of beads and bags of beads just everywhere. I — I didn’t personally see a specific bag pointed out.”
As noted, both Mr. Bruneau and Mr. Kelly testified on behalf of the Endymion Krewe at the La. C.C.P. art. 1442 deposition. Mr. Bruneau testified that at the pre-parade meeting for Krewe members, he routinely conducted a lengthy briefing regarding, among other things, safety issues. He also testified that to |9access the Krewe’s website, the Krewe members must acknowledge receipt of the Krewe Safety Policy. Mr. Bruneau acknowledged that the Krewe Safety Policy did not directly address whether the Krewe members riding the floats were allowed to throw a bagful of beads or a dozen beads at once. Nonetheless, he testified that throwing a bagful of beads or a dozen beads was not something that was prohibited by law, by the jurisprudence, or by “the general conduct of Mardi Gras parades.” Rather, he testified that “[w]hat is prohibited, at least by the Krewe of Endymion, is that we tell people not to throw something at somebody, where that person could get hurt.” Finally, Mr. Bru-neau testified that “[w]e authorize people to throw to people. And yes, packs of beads can be thrown at one time.”
Mr. Kelly testified that not only was he president of the Endymion Krewe, but also he owned Beads by the Dozen. Counsel for Mrs. Citron presented Mr. Kelly with a photograph of the bead that Mrs. Citron saved.[6] Based on that photograph, Mr.. Kelly testified that the bead was neither a typical Endymion bead nor one of the types of beads that he sells. He characterized the bead as one among the thousands of different types of beads thrown. Nonetheless, Mr. Kelly, at the deposition, provided a bead that was “some sort of a reasonable facsimile.” Mr. Kelley testified that the strand of beads he provided were like “ping pong balls,” which are very light. He also testified that “[mjost people that sell that bead only put three to six pieces in a package.”
|inFollowing the hearing on the motion for summary judgment, the trial court granted the Endymion Krewe’s motion, for the reasons orally assigned in open court, and dismissed the Citrons’ case. This appeal followed.
DISCUSSION
Summary Judgment Principles
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Samaha v. Rau, 07-1726, pp. 3-4 (La.2/26/08), 977 So.2d 880, 882-83; see also Duncan v. U.S.A.A. Ins. Co., 06-363, p. 3 (La.11/29/06), 950 So.2d 544, 546 (noting that the summary judgment procedure is designed to avoid a full-scale trial when there is no genuine issue of material fact). “Favored in Louisiana, the summary judgment procedure ‘is designed to secure the just, speedy, and inexpensive determination of every action’ and shall be construed to accomplish these ends.” King v. Parish National Bank, 04-0337, p. 7 (La.10/19/04), 885 So.2d 540, 545 (quoting La. C.C.P. art. 966(A)(2)).
Despite multiple amendments to the code article governing summary judgment in the last few years,[7] the summary judg *312 ment procedure is still favored. La. C.C.P. art. 966(A)(2). The motion for summary judgment “shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.” La. C.C.P. art. 966(B)(2). .
hJn 2013, the Legislature clarified the procedure for admitting evidence for purposes of the motion for summary judgment. As amended, La. C.C.P. art. 966(F) provides that all attachments to the motion and the opposition memorandum are deemed admitted.[8]
The burden of proof on a motion for summary judgment is addressed in La. C.C.P. art. 966(C)(2); as this court has explained, this code article provides as follow:
The code [La. C.C.P. art. 966(C)(2)] provides that where [as in the instant case] the party moving for summary judgment will not bear the burden of proof at trial, their burden does not require them to negate all essential elements of the adverse party’s claim, but rather to point out to the court that an absence of factual support exists for one or more elements essential to the adverse party’s claim. Thereafter, if the adverse party fails to produce factual support sufficient to establish that it will be able to satisfy its evidentiary burden of proof at trial, no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law. The adverse party cannot rest on the mere allegations or denials of his pleadings when a motion for summary judgment is made and supported by affidavits, but is required to present evidence establishing that material facts are still at issue.
Sullivan v. Malta Park, 14-0823, p. 8 (La.App. 4 Cir. 12/10/14), 156 So.3d 1200, 1205-06.
| ^Although the summary judgment procedure is now favored, some settled principles still apply. First, “[a] trial judge cannot make credibility determinations on a motion for summary judgment.” Hutchinson v. Knights of Columbus, Council No. 5747, 03-1533, p. 8 (La.2/20/04), 866 So.2d 228, 234. Second, “factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor.” Willis v. Medders, 00-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050.[9] Final *313 ly, “[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or weigh evidence.” Suire v. Lafayette City-Parish Consol. Gov’t, 04-1459, p. 11 (La.4/12/05), 907 So.2d 37, 48.
A trial court’s disposition of a motion for summary judgment is reviewed using the de novo standard of review “under the same criteria governing the trial court’s consideration of whether summary judgment is appropriate.” D’Angelo v. Guarino, 10-1555, p. 3 (La.App. 4 Cir. 3/9/12), 88 So.3d 683, 686, writ denied, 12-0746 (La.5/18/12), 89 So.3d 1196 (citing Wilson v. Calamia Constr. Co., 11-0639, p. 3 (La.App. 4 Cir. 9/28/11), 74 So.3d 1198, 1200). In determining whether summary judgment is appropriate, a court must resolve the following two issues: (i) whether there is any genuine issue of material fact; and (ii) whether the mover is entitled to judgment as a matter of law. Warren v. Kenny, 10-1580, pp. 5-6 (La.App. 4 Cir. 4/27/11), 64 So.3d 841, 845-46 (citing Ocean Energy, Inc. v. Plaquemines Parish Government, 04-0066, p. 5 (La.7/6/04), 880 So.2d 1, 5).
“A genuine issue is. one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, no need for trial on that issue exists and summary judgment is appropriate.” Johnson v. Loyola Univ. of New Orleans, 11-1785, p. 7 (La.App. 4 Cir. 8/8/12), 98 So.3d 918, 923. A material fact is “one that would matter on the trial on the merits.” Smith v. Our Lady of the Lake Hosp., Inc., 93-2512, p. 27 (La.7/5/94), 639 So.2d 730, 751. The determination of whether a fact is material thus turns on the applicable substantive law or theory of recovery. Thomas v. North 40 Land Dev., Inc., 04-0610, p. 22 (La.App. 4 Cir. 1/26/05), 894 So.2d 1160, 1174. “Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.” Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (citing 10A C. Wright, A. Miller, & M. Kane, FEDERAL PRACTICE AND PROCEDURE § 2725, pp. 93-95 (1983)); see also Smith v. Casino New Orleans Casino, 12-0292, p. 10 (La.App. 4 Cir. 10/3/12), 101 So.3d 507, 514. Because the applicable substantive law determines materiality, whether a fact is “material” for summary judgment purposes can only be determined based on the governing substantive law.
The Mardi Gras Immunity Statute
The governing substantive law in this case is the Mardi Gras immunity statute, La. R.S. 9:2796. Summarizing the statute, a commentator notes:
The law was first enacted in 1979, ostensibly to control rising insurance costs for parading organizations. Over its life, the law has been expanded to include events other than Mardi Gras, and redrafted several times, and now has two parts:
|14* the first creating broad immunity for krewes which sponsor parades; and
*314 • the second codifying that anyone who attends such a parade “... assumes the risk of being struck by any missile whatsoever which has been traditionally thrown, tossed or hurled by mem-kers • - • - ”
William T. Abbott. Show Us Your Torts. 50 La. B.J. 350, 351 (2003).
In this case, the Endymion Krewe asserted the Mardi Gras immunity statute as an affirmative defense in its answer and as the basis for its motion for summary judgment. As the movant, the Endymion Krewe had the initial burden of providing evidence to establish its right to immunity under the statute. Although in their petition and in their opposition to the motion the Citrons challenged the application of the statute, they do not challenge the application of the statute on appeal.[10] Rather, their arguments on appeal focus on the applicability of the statutory exception for the “deliberate and wanton act” or “gross negligence” exception (the “gross negligence exception”).
Given ⅛6 Endymion Krewe estab. lighed the statute applied for purposes of summary judgment,[11] the burden shifted to the Citrons, as the non-movants, to _bestablish the existence of a genuine issue of material fact concerning the applicability of the gross negligence exception. See Binkley v. Landry, 00-1710, pp. 9-10 (La.App. 1 Cir. 9/28/01), 811 So.2d 18, 25. As noted earlier, the Citrons alleged in their-petition that the Endymion Krewe’s acts were wanton and grossly negligent; and the Citrons would have the burden of proving at trial that the Endymion Krewe’s acts were deliberate and wanton or grossly negligent in order to establish the gross negligence exception applies. See Foshee v. Louisiana Farm Bureau Cas. Ins. Co., 41,842, pp. 8-9 (La.App. 2 Cir. 1/31/07), 948 So.2d 1171, 1177.
Focusing on the gross negligence exception, the Citrons assign as error the trial *315 court’s finding that there was no genuine issue of material fact as to the following two points:
[i] whether gross negligence occurred when an Endymion Krewe member threw a bag of heavy beads where one string of beads weighed 11.2 ounces, and one bag of beads weighed 33.6 ounces or • more; and
[ii] whether the Endymion Krewe is grossly negligent by allowing its riders to throw bags of heavy beads to Extravaganza participants when it knew or should have known that throwing a bag of heavy beads is dangerous.
The Citrons’ first argument focuses on the unidentified krewe member’s conduct; their second argument focuses on the krewe’s conduct.
To the extent the Citrons’ argument regarding the unidentified krewe member’s conduct is an attempt to hold the Endymion Krewe vicariously liable for |1fiits krewe member’s conduct, this argument is unpersuasive. No substantive authority exists to impose vicarious liability on a carnival krewe or organization for its members’ acts.[12] To the contrary, the jurisprudence has rejected the argument that a krewe is vicariously liable for its members’ acts. See Kibble v. B.P.O. Elks Lodge No. 30, 640 So.2d 267, 269 (La.App. 4th Cir.1993).[13] To impose liability on a krewe, there must be evidence of the krewe’s — as opposed to its member’s— gross negligence.[14] The narrow issue on appeal is thus whether the Citrons established a genuine issue of material fact as to *316 the gross negligence of the Endymion Krewe.
117The Citrons’ argument regarding the Endymion Krewe’s gross negligence centers on a contrast between the facts of this case and two of this court’s prior cases— Brown v. Lee, 05-1302 (La.App. 4 Cir. 4/5/06), 929 So.2d 775, and Palmer v. Zulu Soc. Aid & Pleasure Club, Inc., 09-0751 (La.App. 4 Cir. 3/1/10), 63 So.3d 131. We briefly outline those cases, which both involved the throwing of a Zulu coconut, to provide a background for analyzing the Citrons’ contentions.
' In Brown, a parade viewer, Ms. Brown, was hit in the head and injured by a coconut thrown by a Zulu Krewe member, Mr. Lee, from a float. Ms. Brown sued both Mr. Lee and the Zulu Krewe. Although the trial court granted the motion for summary judgment filed by both the Zulu Krewe and Mr. Lee, Ms. Brown appealed only as tó the liability of Mr. Lee. Hence, Zulu was not a party to the appeal. Reversing the trial court’s decision granting Mr. Lee’s summary judgment motion, this court determined that a genuine issue of material fact existed as to whether Mr. Lee threw the coconut in a grossly negligent manner, as Ms. Brown contended, or handed the coconut to Ms. Brown, as Mr. Lee contended. In so holding, we reasoned as follows:
[Tjhrowing a hard, heavy object such as a coconut at someone in a crowd of people a distance equal to the length of one and a half cars in an overhand manner demonstrates the “want of even slight care and diligence” that is the very definition of “gross negligence.” The Zulu organization prohibits its members from throwing coconuts into a crowd and only permits its members to' disseminate coconuts to parade spectators by handing them to the intended recipient. If Mr. Lee did not follow the rules of the Zulu organization with respect to distributing coconuts along the Zulu parade route, and instead threw a coconut in Ms. Brown’s direction in the manner alleged by her, he was grossly negligent. If, on the other hand, Mr. Lee handled the coconut that hit Ms. Brown in a manner that was not grossly negligent, then he is shielded from liability by the provisions of La. R.S. 9:2796.
Brown, 05-1302 at p. 6, 929 So.2d at 779.
|1sIn Palmer, a parade viewer, Ms. Palmer, was hit in the head by a Zulu coconut allegedly thrown by Zulu’s vice-president, Mr. Stewart, from a float. ' Ms. Palmer sued Zulu and Mr. Stewart. According to Ms. Palmer, the coconut that hit her was one of the five coconuts that Mr. Stewart threw in quick succession off the back of the float on which he was riding. Ms. Palmer stressed that Mr. Stewart’s actions were in violation of two of Zulu’s internal rules — the rules forbidding the throwing of coconuts and the tossing of any throw to the rear of a float. Ms. Palmers thus argued that Mr. Stewart’s actions were “more egregious than what the float rider did in the Brown case.” Ms. Palmer’s evidence included two videos of Mr. Stewart throwing the coconuts. Mr. Stewart, on the other hand, testified that he did not throw the coconut that struck Ms. Palmer. Affirming the trial court’s decision granting the motion for summary judgment filed by Zulu and Mr. Stewart, this court reasoned that the two videos did not show Ms. Palmer being struck by a coconut, much less by a coconut thrown by Mr. Stewart. Finding Ms. Palmer’s reliance on Brown misplaced, we reasoned:
Brown is clearly distinguishable in that Ms. Brown suffered a severe injury of her eye socket. Further considering that the plaintiff in Brown, had independent witnesses who both saw the dis *317 tance from which the coconut was hurled, and the reckless and wanton manner it was hurled through the air, and further considering the fact that incident in Brown took place before the “new coconuts” were used by the Krewe of Zulu, the matter sub judice is quite different.
Palmer, 09-0751 at p. 13, 63 So.3d at 138— 39.
At the hearing on the motion for summary judgment, the trial court stated that in the two cases cited by the Citrons— Brown and Palmer — there were several factors that were considered by the court of appeal as potentially establishing gross negligence. Those factors, the trial court noted, were as follows: (i) the weight of the object thrown, (ii) the distance the object was thrown, and (iii) the manner in |19which the object was thrown. The trial court found that “[n]one of that information seems to exist in this case.” [15]
On appeal, the Citrons contend the trial court erred in failing to find a genuine issue of material fact as to at least two of the factors — the weight of the object thrown and the distance the object was thrown. As to the weight of the bag of beads, the Citrons point out that they produced the bead Mrs. Citron saved in discovery and that the bead weighed 11.2 ounces. The Citrons further point out that Mr. Kelly, at the La. C.C.P. art. 1442 deposition, testified that he was the owner of Beads by the Dozen, a company that presumably for many years has sold vast quantities of beads to float riders.[16] Based on Mr. Kelly’s testimony that generally these types of beads are sold in bags containing three to six beads, the Citrons calculate that the bag of beads that struck Mrs. Citron would have contained at a minimum three beads — weighing 33.6 ounces (three beads each weighing 11.2 ounces) — or at a maximum six beads— weighing 67.2 ounces (six beads each weighing 11.2 ounces). According to the Citrons, since the bag of beads weighed considerably more than the Brown coconut (weighing 17.6 ounces),[17] the Endymion Krewe member’s throwing of this dense, heavy bag constituted gross negligence or, at a minimum, there is a question of genuine issue of material fact on this issue.
LftAs to the distance the bag of beads was thrown, Mrs. Citron testified that the bag of beads was hurled towards her by an Endymion Krewe member from the upper level of an Endymion float and that the bag of beads came from the area of float number seven. The Citrons contend that since the distance from the upper level of an Endymion float to a parade viewer on the ground level is irrefutably the distance of at least one and a half car lengths — the distance referenced by the court in Brown and Palmer when determining gross negligence — it is reasonable to find that the relevant distance has been established. Alternatively, they contend there is a genuine issue of material fact on this issue.[18]
*318 We find the Citrons’ contentions unpersuasive. First, the Citrons’ contention that the bag of beads that struck Mrs. Citron was a large, heavy object weighing over 33.6 ounces is an unsupported factual allegation. As the Endymion Krewe points out, the Citrons in their brief cite as a given the alleged weight of the single strand of beads that Mrs. Citron saved— 11.2 ounces. Based on the weight of the bead coupled with Mr. Kelly’s testimony regarding the number of strands _J_2igenerally included in the bag of beads, the Citrons calculate the weight of the bag of beads. These measurements, however, lack any evidentiary basis.[19]
Although the Citrons allege in their petition that Mrs. Citron was struck in the head by “a large bag of Mardi Gras beads thrown overhand by one of the masked riders on float number 7,” Mrs. Citron acknowledged in her deposition that she did not observe the bag of beads leave someone’s hands on float number seven and that she did not observe the bag of beads at any time before it struck her. Rather, she testified that she “understood they came from the upper deck.” She explained that her recollection was “people saying or telling me that they were thrown from high above.” None of these people, however, were deposed. The record is thus devoid of any evidence regarding the distance the object that struck Mrs. Citron was thrown.
Setting aside the Citrons’ inability to establish the weight or size of the object thrown and the manner or distance in which the object was thrown,[20] the Citrons are unable to prove that the Endymion' Krewe, as an organization, acted in a grossly negligent manner. The Citrons’ contention that there is organizational liability on the part of the Endymion Krewe is based presumably, as the Endymion Krewe points out, on a standard or weight limit for parade throws extrapolated from the Brown and Palmer cases. According to the Citrons, the traditional Zulu coconut at issue in Brown, had an estimated weight of 17.6 ounces; whereas, the |22newer, lightweight, hollowed-out coconut at issue in Palmer had an estimated weight of four to five ounces. The Citrons stress this court’s statement in Palmer that “[ejonsid- *319 ering the fact that the incident in Brown took place before the ‘new coconuts’ were used by the Krewe of Zulu, the matter sub judice is quite different.”[21] The Citrons extrapolate from this statement that this court based its finding of no organizational liability on the part of the Krewe of Zulu on the size and weight of the objects that are specifically prohibited to be thrown by float riders and thus established a standard for other krewes. The Citrons’ attempt to extrapolate from Brown and Palmer a rule of organizational liability is misplaced. In Broom, this court was only addressing the potential liability of the Krewe member for gross negligence; the liability of the organization, the Krewe of Zulu, was not at issue.
Regardless, in this case, as discussed above, neither the weight nor any other measurement of the bag of beads that allegedly struck Mrs. Citron has been established by the evidence. Rather, the Citrons’ contention that Mrs. Citron was struck by a heavy bag of beads is a mere formal allegation, which is insufficient |^to preclude summary judgment. See Davis v. Fortis Benefits Ins. Co., 08-1080, p. 8 (La.App. 3 Cir. 3/1/09), 6 So.3d 929, 934 (citing City of Baton Rouge v. Cannon, 376 So.2d 994, 996 (La.App. 1st Cir.1979)) (quoting Metropolitan Bank of Jefferson v. Summers, 257 So.2d 179, 181 (La.App. 4th Cir.1972)) (holding that “a mere formal allegation without substance will not preclude the rendering of summary judgment.”).
Addressing the meaning of gross negligence,[22] the Louisiana Supreme Court in Rabalais v. Nash, 06-0999, pp. 5-6 (La.3/9/07), 952 So.2d 653, 658, stated:
The failure of “due care” is synonymous with ordinary negligence. “Reckless disregard,” however, connotes conduct more severe than negligent behavior. “Reckless disregard” is, in effect, “gross negligence.” Louisiana courts have frequently addressed the concept of gross negligence. Gross negligence has been defined as the “want of even slight care and diligence” and the “want of that diligence which even careless men are accustomed to exercise.” Ambrose v. New Orleans Police Department Ambulance Service, 93-3099, 93-3110 and 93-3112 (La.7/5/94), 639 So.2d 216; State v. Vinzant, 200 La. 301, 7 So.2d 917 (La.1942). Gross negligence has also been termed the “entire absence of care” and the “utter disregard of the of prudence, amounting to complete neglect of the rights of others.” Hendry Corp. v. Aircraft Rescue Vessels, 113 F.Supp. 198 *320 (E.D.La.1953) (applying Louisiana law). Additionally, gross negligence has been described as an “extreme departure from ordinary care or the want of even scant care.” W. Page Keeton, et. al., Prosser & Keeton on the Law of Torts, § 34, at 211 (5th ed.1984); 65 C.J.S. Negligence, § 8(4)(a), at 539-40 (1966 & Supp. 1993). “There is often no clear distinction between such [willful, wanton, or reckless] conduct and ‘gross’ negligence, and the two have tended to merge and take on the same meaning.” Falkowski v. Mauras, 637 So.2d 522 (La.App. 1st Cir.), writ denied, 629 So.2d 1176 (La.1993) (quoting Prosser & Keeton, supra, at 214). Gross negligence, therefore, has a well-defined legal meaning distinctly separate, and different, from ordinary negligence.

Id.

I^The gist of the .Citrons’ argument is that it was gross negligence for the Endymion Krewe to fail to take steps — such as enacting a policy — prohibiting its members from throwing bags of beads, especially at its Extravaganza. The Endymion Krewe counters that it prohibited its members from throwing any object at parade viewers and that it instructed its riders to throw objects “to” not “at” parade viewers. In support, it cites Mr. Bruneau’s testimony that at the annual pre-parade meeting he instructs Endymion riders to be safe and to throw items to parade viewers, not at them. These facts, the -Endymion Krewe contends, establish that it takes precautions and that it, at the very least, exercised slight care, regard, and diligence for the safety of its parade viewers and that it cannot be found to be grossly negligent. We agree.
The jurisprudence has held that the Legislature’s enactment of the Mardi Gras immunity statute “demonstrates a public policy opposed to unduly extending the reasonably prudent standard of care to risks over which the organization has little or no control and which are not easily associated with a breach of the standard of care.” Caldwell v. Let The Good Times Roll Festival, 30,800, p. 22, n. 3 (La.App. 2 Cir. 8/25/98), 717 So.2d 1263, 1274. The throwing of a bag of beads is such a risk. It follows that the actions surrounding the accident are simply inherent risks associated with Mardi Gras parades. Indeed, as Ms. Guillot testified, “you get hit at Mardi Gras parades. I mean, I’ve been hit before.” As Mr. Bruneau pointed out, throwing a bag of beads is not prohibited by law, by the jurisprudence, or by “the general conduct of Mardi Gras parades.” To the contrary, the jurisprudence has found that it is not gross negligence to throw a bag of beads.[23]
| «¡This court in Duryea construed La. R.S. 9:2796 as absolving “krewes from liability for injuries caused by objects thrown to parade spectators, except in extreme *321 and unusual circumstances.” 96-1018 at p. 2, 700 So.2d at 1126. The record reflects, as the Citrons acknowledge, that it is common knowledge that there are hundreds of beads and bags of beads thrown towards the tables where the parade viewers watch the parade in the Superdome for the Extravaganza. The conduct at issue, as the Endymion Krewe contends, does not constitute “extreme and unusual circumstances.”
Accordingly, we find, as did the trial court, that the Citrons failed to establish a genuine issue of material fact regarding the alleged gross negligence on the part of the Endymion Krewe. The trial court thus did not err in granting the Endymion Krewe’s motion for summary judgment.
DECREE
For the foregoing reasons, the judgment of the trial court is affirmed.
AFFIRMED.

. The Extravaganza, which is an invitation-only event, is a continuation of the Endymion Krewe’s parade in an inside venue. Except for the year after Hurricane Katrina, 2006, the venue for the Extravaganza has been the Mercedes-Benz Superdome (the "Super-dome”).

. The Mardi Gras immunity statute, La. R.S. 9:2796, provides:
A. Notwithstanding any other law to the contrary, no person shall have a cause of action against any krewe or organization, any group traditionally referred to as Cour-ir de Mardi Gras, or any member thereof, which presents Mardi Gras parades, including traditional rural Mardi Gras parades, processions, or runs in which participants ride on horseback, march, walk, or ride on horse-drawn or motordrawn floats, or wheeled beds, or other parades, whether held on a public or private street or waterway, or in a building or other structure, or any combination thereof, connected with pre-Lenten festivities or the Holiday in Dixie Parade, or against any nonprofit organization chartered under • the laws of this state, or any member thereof, which sponsors fairs 'or festivals that present parades or courirs, for any loss or damage caused by any member thereof, during or in conjunction with or related to the parades or courirs presented by such krewe or organization, unless said loss or damage was *307 caused by the deliberate and. wanton act or gross negligence of the krewe or organization, or any member thereof as the case may be, or unless said member was operating a motor vehicle within the parade or festival and was a compensated employee of the krewe, organization, or c.ourir. The provisions of this Section shall not be intended to limit the liability of a compensated employee of such krewe or organization for his individual acts of negligence.
B. Any person who is attending or participating in one of the organized parades of floats or persons listed in Subsection A of this Section, when the parade begins and ends between the hours of 6:00 a.m. and 12:00 midnight of the same day, assumes the risk of being struck by any missile whatsoever which has been traditionally thrown, tossed, or hurled by members of the krewe or organization in such parades held prior to the effective date of this Section. The items shall include but are not limited to beads, cups, coconuts, and doubloons unless said loss or damage was caused by the deliberate and wanton act or gross negligence of said krewe or organization. ,

. By supplemental petition, the Citrons added Endymion's insurer, Underwriters at Lloyds, London ("Underwriters"), as a defendant. Underwriters, however, is neither mentioned in the summary judgment nor a party to this appeal.

. At its La. C.C.P. art. 1442 deposition, the Endymion Krewe presented two corporate representatives to represent the organization — Mr. Bruneau and Mr. Kelly.

. Contrary to the allegations of the petition, Mi's. Citron acknowledged in her deposition that she was not seated at her table eating and listening to music when the accident occurred. Rather, she was at a friend's table. According to Mrs. Citron, she was at the same table that Ms. Guillot was seated; however, she stated that she was unsure if it was actually Ms. Guillot’s or someone else's table.

. A copy of the photograph of the bead is not included in the record on appeal. Mrs. Citron testified that she did not take any other photographs.

. The summary judgment in this case was signed on July 11, 2014; thus, it is governed by the version of La. C.C.P. art. 966 in effect after its amendment by 2013 La. Acts, No. *312 391, § 1, effective August 1, 2013. Changes implemented by a later amendment to La. C.C.P. art. 966 are not implicated in this appeal. See 2014 La. Acts, No. 187, § 1, effective August 1, 2014.

. Explaining the 2013 amendment to La. C.C.P. art. 966(F), a commentator noted:
Read in conjunction with the filing deadlines in Article 966(B), motion for summary judgment documentation is now "admitted” for consideration by the court when it is "cited and attached” to the motion or opposition and filed on time. Once "admitted,” the judge can consider it in determining its effect on the issues raised by the motion, if any, or it can be excluded from the record altogether if there is a sustained objection. The amended article further added in 966(F)(3) a provision that objections to documentation can be raised either with a motion to strike or in a memorandum. When timely made, such written objections function like oral objections to evidence offered at trial, adjusted to fit pretrial procedures.
William R. Forrester, Jr., 2013 Changes to Code of Civil Procedure: Recent Amendments Create Evidentiary Traps for the Unwary, 61 La. B.J. 98, 99 (2013).

. However, once the movant has carried its burden under La. C.C.P. art. 966, the non-movant’s "burden is not satisfied with ‘some *313 metaphysical doubt as to the material facts,’ by ‘conclusory allegations,' by 'unsubstantiated assertions,’ or by only a 'scintilla' of evidence.” Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (internal citations omitted). "We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. We do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.” Id.

. In their petition and in the proceedings before the trial court, the Citrons argued that the statute was inapplicable. First, in the petition, they averred that the statute did not apply because Ms. Citron did not attend a parade. According to the petition, "Mrs. Citron, who was formally dressed in a long evening gown and high heels, did not attend the ■ Endymion Parade that preceded the Extravaganza and did not consider herself a spectator at a parade.” The petition further states that "Mrs. Citron was only a participant in the Endymion Extravaganza. She did not attend (he parade, approach the parade or in any way signal that she was assuming the risk of 'being struck by any missile' as described in Subsection (B) [of La. R.S. 9:2796].” Second, in opposing Endymion's motion for summary judgment, the Citrons argued that there was no parade within the meaning of the City's ordinances because there were insufficient bands to constitute a parade. Neither of these arguments was raised on appeal. Rather, the Citrons' argument on appeal is confined to the application of the gross negligence exception.

. As stated in Mr. Bruneau’s affidavit, the Endymion Krewe is an organization that sponsors a Mardi Gras parade. Mrs. Citron alleges that she was injured while attending the Endymion Extravaganza, which is a continuation of the Endymion Krewe’s parade in an inside venue. The statute states that a parade .includes one held in a "building or other structure.” The Superdome is a building or other structure. Moreover, the statute applies not only to parades, but also to events "related to” parades. See Graves v. Krewe of Gladiators, 01-0986 (La.App. 4 Cir. 6/27/01), 790 So.2d 155 (finding statute applies to injury occurring while plaintiff was descending a ladder on a carnival float during a pre-parade party and emphasizing the statutory language referring to "any loss or damage related to parades”). The Extravaganza is an event related to the Endymion Krewe's parade. Beads are throws that have been traditionally thrown at parades. Hence, the Endymion Krewe met its burden of providing proof establishing its entitlement to invoke statutory immunity under La. R.S. 9:2796.

. Vicarious liability means that “a person is liable not because he personally committed a tort but because the law makes him responsible (liable) for the tort (negligent or intentional) of another.” Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 1-7 (1996). For policy reasons, vicarious liability is legally imposed on a defendant who has "a legally significant relationship with the tortfeasor actor.” Id. In Louisiana, the two primary types of vicarious liability recognized are the master for the servant and the parent for the child. Id.

. In Kibble, the issue arose in the context of a challenge to the jury instructions as incorrectly stating the.law. The appellants in Kibble contended that the trial court erred in the following three respects:
(1) instructing the jury that a krewe "is liable for negligent acts of its members if the members were acting within the course and scope of the activities or purposes which the corporation was formed to promote,” (2) in referring throughout the instructions to the negligence of the Elks or "one of its members,” and (3) in presenting the jury with a question on the verdict form which asked if the plaintiff was "injured as a result of the deliberate and wanton act or gross negligence of B.P.O. Elks Lodge # 30 or a rider in its parade.”
Kibble, 640 So.2d at 269. The appellants in Kibble further contended that the jury charge was misleading because it indicated that a judgment could be rendered against the Elks Krewe if its member committed the act. The appellee in Kibble countered that the jury instructions were proper under a vicarious liability theory. Disagreeing, this court found the jury instructions were legally erroneous.

. Palmer v. Zulu Soc. Aid & Pleasure Club, Inc., 09-0751 (La.App. 4 Cir. 3/1/10), 63 So.3d 131 (holding that the acts of the rider are not attributable to the krewe itself unless the krewe acted in a deliberate or wanton manner or in a grossly negligent situation); see also Pierre v. Zulu Social Aid & Pleasure Club, Inc., 04-0752 (La.App. 4 Cir. 9/29/04), 885 So.2d 1261 (reasoning that "[flor Zulu to be held liable under La. R.S. 9:2796, Ms. Pierre [the plaintiff] must allege and prove that the loss or damage was caused by the deliberate and wanton act or gross negligence of the organization itself”); Schell v. K & K Ins. Group, Inc., 99-786, p. 6 (La.App. 5 Cir. 2/16/00), 756 So.2d 546, 549 (holding that a plaintiff is required to prove the krewe’s or organization's gross negligence and that “[s]uch negligence by a member does not in itself impose liability upon the organization”).

. The trial court also emphasized the Citrons’ failure to depose either the float riders or the people who Mrs. Citron testified told her the beads came from the upper level of an Endymion float.

. We note that Mr. Kelly was not qualified as an expert in beads.

. The Citrons estimate the weight of the traditional coconut at 17.6 ounces based on a reference to a Wikipedia article, which was introduced as an attachment to their opposition to the motion for summary judgment.

.As to the manner in which the bag of beads was thrown, the Citrons contend that a float rider throwing a heavy object in an overhand manner is a factor in determining gross negligence under Brown and Palmer. However, they contend that this is not a determinative factor. They contend that the Endymion Krewe should not be allowed to invoke as a defense the Citrons' inability to *318 identify the specific masked Krewe member who threw the bag of beads that injured Mrs. Citron. They contend that the Endymion Krewe is aware that virtually all of its float riders are throwing bags of beads in an overhanded manner, especially at the Endymion Extravaganza. They contend that this is common knowledge of the public and parade viewers. In support, they cite Ms. Guillot’s statement that every year at the Extravaganza “Where’s hundreds of beads and bags of beads just everywhere” and videos of the Extravaganza in the public domain (on YouTube). Nonetheless, the Citrons contend that the Endymion Krewe "endorses and excuses this behavior.” The Citrons submit that the Endymion Krewe’s permitting such behavior constitutes gross negligence. As the Endymion Krewe points out, on this point this case is distinguishable from Brown in which there was contradictory testimony or evidence regarding the manner in which the coconut was passed from the rider to the plaintiff. In this case, neither Mrs. Citron nor any other witness saw where the beads or bag of beads was thrown from. Hence, we find, agreeing with the Endymion Krewe’s contention, that there is no basis for a dispute regarding the manner the object was thrown.

. Likewise, the Citrons’ allegation in their petition that "[t]he beads in the bag (which contained twelve strands of beads) were oversized and unusually heavy” is not supported by any evidence. Indeed, Mrs. Citron acknowledged in her deposition that she did not know how many beads- were in the bag or how much the beads weighed.

. The Endymion Krewe emphasizes that even if such evidence existed in this case it would only establish the potential gross negligence of the Krewe member who threw the' bag of beads.

. As the Citrons emphasize, this court in Palmer noted:
In 2004, the Krewe of Zulu took voluntary steps, despite the statutory grant of immunity, to increase parade-goer safety by adopting the use of ''lightweight” coconuts in its parades. The new lightweight coconuts, which consist of only the shell, weigh only four (4) to five (5) ounces each. The use of these coconuts was first adopted in the 2005 parade.
The appellees note that the original or ‘‘traditional” type coconuts were regular, full coconuts which were simply purchased from local produce suppliers or grocery stores. The coconuts were shaved and decorated, but they were not hollowed out.
The appellees note that these traditional coconuts were the ones being used at the time the MGIS was amended in 1987 to provide immunity for the hurling of coconuts.
Palmer, 09-0751 at pp. 10-11, 63 So.3d at 137.

. Although the Mardi Gras immunity statute refers to the exception as covering "deliberate and wanton” and "gross negligence,” these terms have been construed as referring to a “single type of blameworthy conduct — the actor's conscious indifference to a very high risk of harm.” Frank L. Maraist & Thomas C. Galligan, Jr., LOUISIANA TORT LAW, § 1-6 (1996).

. Isidore v. Victory Club, Inc., 05-0291, p. 6 (La.App. 4 Cir. 11/30/05), 923 So.2d 747, 751 (finding statute applied despite a witness' testimony that an unopened bag of beads were thrown overhanded "like a baseball”); Orlando v. Corps de Napoleon, 96-991, p. 6 (La.App. 5 Cir. 12/20/96), 687 So.2d 117, 120 (finding statute applied to injury resulting from a sign falling on plaintiff's head as a result of a bag of beads thrown from a float striking the sign; "the sign was banging around from the wind, that a float member threw a bag of beads with force to the cameramen on the scaffold, that the sign broke from its connections and fell on plaintiff. These facts do not meet the test for deliberate and wanton act or gross negligence.”); Kibble v. B.P.O. Elks Lodge No. 30, 640 So.2d 267, 268 (La.App. 4 Cir.1993) (finding no gross negligence based on a float rider throwing a bag of beads into the crowd as if he were pitching a baseball); Duryea v. Handy, 96-1018, p. 1 (La.App. 4 Cir. 10/3/97); 700 So.2d 1123, 1129 (Schott, L, dissenting) (noting that "[t]he act of throwing a pack of beads to a person in the stands normally does not present an unreasonable risk of harm.”).