| NORMA JEAN TRAYANOFF | * | NO. 2024-CA-0366 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| OMNI HOTELS | * | |
| MANAGEMENT | | FOURTH CIRCUIT |
| CORPORATION AND ROYAL | * | |
| O REAL ESTATE HOLDINGS, | | STATE OF LOUISIANA |
| LLC | * * * * * * * | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-11203, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Karen K. Herman**
* * * * * *
(Court composed of Chief Judge Terri F. Love, Judge Sandra Cabrina Jenkins,
Judge Karen K. Herman)


Jordan T. LeBlanc
Clarence F. Favret, III
James C. Cronvich
FAVRET CARRIERE CRONVICH, LLC
650 Poydras Street
Suite 2300
New Orleans, LA 70130


      COUNSEL FOR PLAINTIFF/APPELLANT


E. Madison Barton
Kyle P. Kirsch
WANEK KIRSCH DAVIES LLC
1340 Poydras Street
Suite 2000
New Orleans, LA 70112


      COUNSEL FOR DEFENDANTS/APPELLEES


      **REVERSED AND REMANDED**
      **DECEMBER 10, 2024**

Plaintiff-Appellant, Norma Jean Trayanoff ("Plaintiff"), appeals the trial court's February 27, 2024 judgment, which granted the motion for summary judgment filed by Defendants-Appellees, Omni Hotels Management Corporations and Royal O Real Estate Holdings, LLC ("Defendants"). For the following reasons, the trial court's judgment is reversed and the matter is remanded for further proceedings.

**FACTS AND PROCEDURAL HISTORY**

This lawsuit arises out of a slip and fall that occurred on or about December 12, 2021. According to the petition, Plaintiff fell as she was descending a set of stairs in Touché Bar, a bar adjoining the Omni Royal Hotel and located at 621 St. Louis Street. At the time of the incident, the property was owned by Royal O Real Estate Holdings, LLC, and operated by Omni Hotels Management Corporation.

As a result of the alleged injuries sustained, Plaintiff filed suit against Defendants on December 9, 2022, alleging they were negligent in failing to provide adequate lighting; in failing to provide sufficient railing for the stairs; in failing to place signage to warn of the stairs turning, and other acts of negligence.

1

On November 21, 2023, Defendants filed a motion for summary judgment seeking to dismiss Plaintiff's claims against them on the grounds that Plaintiff cannot establish that the steps were defective or that Defendants had any knowledge of the alleged defect. Defendants also claimed that Plaintiff failed to see the open and obvious steps in her path. In support of its motion for summary judgment, Defendants submitted the petition for damages, excerpts from the deposition of Plaintiff; and surveillance video of the incident.

In her deposition, Plaintiff testified that on the day of the incident she attended a Christmas brunch at the hotel with a group called New Orleans Women and Wine. She stated that she had about two mimosas at brunch and afterwards walked to a nearby bar with a group of friends but it was closed. Plaintiff and her friends then proceeded to Touché Bar. Upon entering the establishment, Plaintiff observed her friends going down stairs to a lower level of the bar and followed them. She estimated that there were eight to ten steps total. Plaintiff testified that she walked down a few steps and observed that there was left turn, a landing area with a wrought iron rail, and then additional steps. Plaintiff noted that the railing across the landing prevented her from continuing straight and caused her to turn. She stated that railing continued down the side of the stairs. Plaintiff said she tripped near the bottom of the stairs and went "flying." The transcript provides:

> So as I'm going down the left side, where the rail is, when I get to the bottom step, one more step, and I'm flying. I didn't even know there was more steps, because you can't see that until you make that turn. And as I step off the last step of the ones going straight down, my next step sent me flying.

Plaintiff stated that she did not attempt to grab the railing next to the stairs because "there was no shot at that. I was already flying… I just went stumbling down the[] steps." Plaintiff testified that the lighting was very dim and that it "looked like a dungeon down there." When questioned about the specific lights contained in photographs near the location of the fall, Plaintiff stated that the lights were not turned on. However, when questioned about whether she saw "anything in front of [her] as [she] was going down, once [she] turned left to step forward," Plaintiff answered that she "saw the room."

After observing the surveillance video at her deposition, Plaintiff admitted that the video showed that the lights were on but maintained that it was still "really dim down there." She noted that before she fell, she had placed her right foot at the edge of the step, and her left foot was "trying to find its place." Plaintiff acknowledged that the handrail was within reach but did not use it. She explained: "I was just taking a step, not knowing I was going down steps." Plaintiff further stated that when her foot hit the step, she stumbled forward "because she didn't know she was going down steps."

The surveillance video depicted Plaintiff as she reached the landing of the stairs and began to turn left. Plaintiff used her left foot to step on the landing, turned slightly, and then stepped with her right foot. Plaintiff took a step with her left foot towards the stair, then stumbled, and fell forward. Plaintiff had her right hand free but did not use the railing as she traversed the stairs.

Plaintiff filed an opposition to the motion for summary judgment on January 23, 2024, arguing that genuine issues of material fact exist regarding whether the stairs and handrail pose an unreasonable risk of harm and whether Defendants knew or should have known of the defect. In opposition, Plaintiff submitted the

3

affidavit of Donald A. Maginnis III, a licensed architect, which included a copy of his expert report; and a portion of Plaintiff's deposition.

In his affidavit and expert report, Maginnis stated that the last tread that Plaintiff stepped on is only ten inches deep, instead of the required eleven inches deep, is "too small for safe step," and violated NFPA (National Fire Protection Association) 101 7.2.2.2.1 (a), IBC (International Building Code) 1009.7.2, and ADA (Americans with Disabilities Act) 4.9.2.

He further noted that the stairs violated 1949 NOBC (New Orleans Building Code) 3302, NFPA 101 7.2.2.3.6.1, NFPA 101 7.2.2.3.6.2, IBC 1009.32 and ADAAG (ADA Accessibility Guidelines) 4.9.2 because the treads vary from ten to eleven inches and the risers vary from 8.5 to 5.5 inches.

Maginnis also attested that the handrails violated NOBC 3305, IBC 1009.15,1012.2,1012.4, NFPA 101 5-2.23.4.3,101-5.2.4.5(a) and ADA 4.9.4 because: "the wall mounted handrail on the left side descending is too low and not graspable[;]" "there are no handrails or extensions on the right side upper and left side lower walls contrary to all codes[;]" "there are no handrails and extensions on the landing and the lower run, the decorative guardrail is too high and does not meet any codes as guardrails." He stated that the two short stair flights are covered in different materials, textures, and colors, which is visually confusing and violated NFPA 101 7.2.2 of the building code.

Maginnis opined that the stairs and handrail constituted an unreasonable risk of harm and unreasonably dangerous condition. He further opined:

> [T]he accident occurred because of the many code related dimensional problems in the risers and treads. In addition, there were issues with the visual confusion in the materials and textures of the walking surfaces, especially at the lower run and landing. The injury probably occurred because of the lack of proper handrails and

extensions, making it difficult for the plaintiff to brace herself and stop her fall.

Maginnis also stated that "had the steps been maintained to code properly and the same materials used throughout the stairs, and had the handrails been properly engineered and constructed, the accident and injury probably would not have occurred."

The motion for summary judgment came for hearing before the trial court on February 8, 2024, and the trial court granted the motion from the bench. The trial court stated, in part:

> I will grant the motion -- defendant's motion for summary judgment because I do not see that a minor deficiency constitutes an unreasonably dangerous condition.

The trial court executed the judgment on February 27, 2024. Plaintiff timely appealed.

**APPLICABLE LAW**

*Standard of Review*

This Court in *Carlin v. Clear Blue Ins. Co.*, 2022-0566, pp. 7-9 (La. App. 4 Cir. 2/8/23), 357 So.3d 533, 537-38, set forth the standard of review on motions for summary judgment as follows:

> A motion for summary judgment is a procedural device used to avoid a full scale trial when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Garrison v. Old Man River Esplanade, L.L.C.,* 2013-0869, p. 2 (La. App. 4 Cir. 12/18/13), 133 So.3d 699, 700; *Duncan v. U.S.A.A. Ins. Co.*, 2006-0363, p. 3 (La. 11/29/06), 950 So.2d 544, 546.

> "A summary judgment is reviewed on appeal *de novo*, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; i.e. whether there is any genuine issue of material fact, and whether the movant is entitled to judgment as a matter of law." *Schultz v. Guoth*, 2010-0343, pp. 5-6 (La. 1/19/11), 57 So.3d 1002, 1005-1006 (quoting *Samaha v. Rau*, 2007-1726, pp. 3-4 (La. 2/26/08), 977 So.2d 880,

882–83); *Smith v. Treadaway*, 2013-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828.

La. C.C.P. art. 966(A)(3) provides that a motion for summary judgment will be granted "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." "The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions." La. C.C.P. art. 966(A)(4).

The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. La. C.C.P. art. 966(A)(2). The procedure is favored and shall be construed to accomplish these ends. *Id*. La. C.C.P. art. 966(D)(1) sets forth the burden of proof in summary judgment proceedings, as follows:

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

"When a motion for summary judgment is made and supported, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided by law, must set forth specific facts showing that there is a genuine issue for trial." La. C.C.P. art. 967(B). "If he does not so respond, summary judgment, if appropriate, shall be rendered against him." *Id*.

"A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could only reach one conclusion, there is no need for trial on that issue, and summary judgment is appropriate." *Crosby v. Sahuque Realty Co., Inc.*, 2021-0167 [p. 6 (La. App. 4 Cir. 10/13/21), 366 So.3d 123, 128] (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 1993-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751). "A fact is material when its existence or nonexistence may be essential to the plaintiff's cause of action under the applicable theory of recovery; a fact is material if it potentially insures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute." *Crosby*, 2021-0167, pp. 6-7, [366 So.3d at 128-29] (citing *Chapital v. Harry Kelleher & Co., Inc.,* 2013-1606, p. 5 (La. App. 4 Cir. 6/4/14), 144 So.3d 75, 81).

A trial court may not weigh conflicting evidence or make credibility determinations in deciding a motion for summary judgment. *Danna v. Ritz-Carlton Hotel Co., LLC*, 2015-0651, p. 6 (La. App. 4 Cir. 5/11/16), 213 So.3d 26, 32 (citing *M.R. Pittman Grp., L.L.C. v. Plaquemines Par. Gov't,* 2015-0860, p. 11 (La. App. 4 Cir. 12/2/15), 182 So.3d 312, 320 and Jeffers v. Thorpe, 1995-1731, p. 4 (La. App. 4 Cir. 1/19/96), 673 So.2d 202, 205). Additionally, "[a]ny doubt regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Danna*, 2015-0651, p. 7, 213 So.3d at 32 (quoting *Smith*, 1993-2512, p. 27, 639 So.2d at 751).

"Any consideration as to whether the plaintiff will succeed at a trial on the merits is irrelevant and an insufficient basis to render a summary judgment against that party." *Jones v. Gov't Emps. Ins. Co.,* 2016-1168, p. 7 (La. App. 4 Cir. 6/14/17), 220 So.3d 915, 921 (quoting *Barbarin v. Dudley*, 2000-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660).

*Premises Liability*

La. C.C. art. 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." La. C.C. art. 2317 also provides that "[w]e are responsible, not only for the damage occasioned by our own act, but for that which is caused by ... the things which we have in our custody."

"If a plaintiff claims damage as a result of a 'ruin, vice, or defect' in a thing within someone else's custody, this invokes La. C.C. art. 2317.1. *Haynes v. Sewerage & Water Bd. of New Orleans,* 2023-0678, p. 16 (La. App. 4 Cir. 7/31/24) --- So.3d ----, ---- 2024 WL 3593653 at *8. La. C.C. art. 2317 provides, in part:

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

7

"La. C.C. art. 2317.1 imposes a duty on a 'custodian of property to keep [that] property in a reasonably safe condition.'" *Haynes*, 2023-0678, p. 17, 2024 WL 3593653 at *8 (quoting *Ramirez v. Lighthouse Prop. Ins. Corp.*, 2021-0184, pp. 3-4 (La. App. 4 Cir. 12/15/21), 333 So.3d 1286, 1289-90.

Further, La. C.C. art. 2322 provides liability for the owner of defective building, and states, in part:

> The owner of a building is answerable for the damage occasioned by its ruin when this is caused by neglect to repair it, or when it is the result of a vice or defect in its original construction; however, he is answerable for damages only upon a showing that he knew, or the exercise of reasonable case, should have known of the vice or defect which caused damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Under any of these theories of recovery, the plaintiff has to prove: (1) the thing was in the owner or custodian's custody or control; (2) it had a vice or defect that presented an unreasonable risk of harm; (3) the defendant knew or should have known of the unreasonable risk of harm; and (4) the defect caused the plaintiff's damages. *Ramirez*, 2021-0184, p. 4, 333 So.3d at 1291; *Haynes*, 2023-0678, p. 17, 2024 WL 3593653 at *8 (citing *Fisher v. Villere*, 2020-0242, p. 9 (La. App. 4 Cir. 2/24/21), 313 So.3d 1282, 1289, and *Szewczyk v. Party Planners W. Inc.*, 2018-0898, p. 7 (La. App. 4 Cir. 5/29/19), 274 So.3d 57, 62). "A plaintiff's failure to prove even one of these factors will defeat his or her negligence claim." *Haynes*, 2023-0678, p. 17, 2024 WL 3593653 at *8 (citing *Ramirez*, 2021-0184, p. 4, 333 So.3d at 1291).

*Open and Obvious Doctrine*

"A defendant generally does not have a duty to protect against an open and obvious hazard." *George v. ABC Ins. Co.,* 2022-0148, pp. 8-9 (La. App. 4 Cir.

10/26/22), 351 So.3d 447, 454, *writ denied,* 2022-01740 (La. 2/7/23), 354 So.3d 677 (citing *Scarberry v. Entergy Corp.,* 2013-0214, p. 10 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 204; *Hutchinson v. Knights of Columbus, Council* No. 5747, 2003-1533, p. 9 (La. 2/20/04), 866 So.2d 228, 234). "In order for a hazard to be considered open and obvious, the Louisiana Supreme Court has consistently stated that the hazard should be one that is open and obvious to all, *i.e.*, everyone who may potentially encounter it." *George*, 2022-0148, p. 9, 351 So.3d at 454 (quoting *Scarberry v. Entergy Corp.,* 2013-0214, p. 10 (La. App. 4 Cir. 2/19/14), 136 So.3d 194, 204; *Murray v. Ramada Inns, Inc.*, 521 So.2d 1123, 1136 (La. 1988)).

**DISCUSSION**

Plaintiff contends on appeal that the trial court erred in granting the motion for summary judgment because Maginnis's affidavit and report shows that the stairs and handrails created an unreasonably dangerous condition and thus establishes a genuine issue of material fact for trial.

Plaintiff relies on *Thompson v. Clearview*, 2018-610 (La. App. 5 Cir. 5/15/19), 273 So.3d 555, to support her position. In *Thompson*, the plaintiff fell as he was exiting Clearview Mall. The plaintiff "stepped off of the red-painted curb leading to the parking lot" and the plaintiff's "ankles twisted, he lost his footing, and he fell into the parking lot[.]" *Id*. at p. 1, 273, So.3d at 557. The plaintiff filed suit alleging the mall exit was defective and unreasonably dangerous because it violated the building code "by having a curb 9 inches above the parking lot grade and only having a 36-inch walkway between the column and the edge of the sidewalk." *Id*. The mall moved for summary judgment on the grounds that the red-painted curb was open and obvious to all. The mall thus argued the plaintiff could not show that that the curb presented an unreasonable risk of harm, and it was

9

entitled to summary judgment. The trial court granted the motion for summary judgment. On appeal, the plaintiff argued that his expert report and affidavit, which stated that the mall exit violated building codes, was sufficient to establish a genuine issue of material fact as to whether the curb near the exit was unreasonably dangerous. The Fifth Circuit agreed and reversed the trial court's judgment, stating:

> To meet his burden of proving the depth of the curb was an unreasonably dangerous condition that was not open and obvious to all, Mr. Thompson submitted an expert report from Neil B. Hall, an expert in the fields of architecture, civil and structural engineering and building codes. Upon inspection, Mr. Hall found the curb measured 9 inches in riser height between the sidewalk adjacent to the building wall and the parking lot slab. He found that the most liberal building code required that the riser height not exceed 7 ¾ inches. Mr. Hall opined that if Mr. Thompson intended to step down at that location, Mr. Thompson would not have anticipated the additional riser height, and Mr. Thompson's fall could be categorized as a misstep due to the excessive height of the curb riser. He concluded that the layout and design of the walkway in front of Clearview Mall's entry/exit doors were unreasonably unsafe conditions that violated the recommendations concerning minimum walkway clearance widths of numerous design standards, and they added to the risk of a pedestrian falling off the edge of the sidewalk, which was in direct violation of building code requirements.
>
> After review of the evidence presented, we find that Mr. Thompson produced factual support sufficient to contest whether the curb at issue was unreasonably dangerous and was not open and obvious. Thus, under the particular facts of this matter, we conclude there are remaining genuine issues of material fact, and summary judgment is inappropriate. Therefore, we find Clearview Mall is not entitled to summary judgment as a matter of law.

*Thompson,* 2018-610, pp. 6-7, 273 So.3d at 559.

Plaintiff thus claims that, like in *Thompson*, her expert's attestation that the stairs violated the applicable building codes and is sufficient to create an issue of material fact as to whether the stairs are unreasonably dangerous and a genuine issue for trial.

However, Defendants argue that *Thompson* is distinguishable because *Thompson* did not involve an open and obvious set of stairs; because there was no evidence that the plaintiff therein consumed alcohol; and because there is no mention of a stair handrails.

Defendant is correct in that Plaintiff in the present case testified that she had observed the stairs and had consumed alcohol prior to the fall. She also did not use the handrail to assist her in traversing the steps. However, Plaintiff also testified the bar lighting was really dim and that she did not reach for the handrail because she did not realize there were stairs to traverse. Moreover, the video appears to show that Plaintiff had trouble finding her footing on the step prior to the fall. Additionally, Maginnis stated that both the stairs and the risers violate building code. Specifically, the tread of the final step is ten inches, where the building code requires that it be eleven inches. Maginnis attested that the ten inch depth on the lower step, where Plaintiff stumbled, is "too small for a safe step." He also stated the wall-mounted handrail is too low and that the decorative guardrail was too high and does not meet code. Further, Maginnis attested that the handrails and the steps created an unreasonably dangerous condition. He also stated that had the handrails and steps been maintained to code properly, the accident probably would not have occurred.

We find that Plaintiff's testimony and Maginnis' affidavit and expert report are sufficient to create an issue of material fact whether the condition of the stairs constitute an unreasonable risk of harm, as in *Thompson*. Moreover, this Court in *Couvillion v. Riverside Props., L.L.C.*, 2017-1000, p. 4 (La. App. 4 Cir. 6/20/18), 249 So.3d 907, 909, also held that an engineer's report/affidavit stating that plaintiff's "injury was due to an unreasonably dangerous condition" caused by

11

"worn out stairs and lack of hand rails" created a genuine issue of material fact regarding the existence of a unreasonably dangerous condition.

Further, while the stairs themselves may have been visible to the bar patrons, the variations in the stair treads and risers do not appear to be a defect that would be open and obvious to all who encounter it. Additionally, when the trial court indicated at the hearing that a "minor deficiency" cannot be an unreasonably dangerous condition, the trial court arguably discredited Maginnis' opinion. As discussed above, the trial court cannot make credibility determinations, evaluate testimony or weigh evidence on motion for summary judgment. While Plaintiff may not ultimately prevail on the merits, there is sufficient evidence to preclude summary judgment at this stage of the proceedings.

Plaintiff further argues that genuine issues of material fact exist as to whether Defendants knew or should have known of the defect because property owners are presumed to know long-standing defects. Plaintiff cites *Carrero v. Mandina's, Inc.,* 2019-0158, p. 12 (La. App. 4 Cir. 8/7/19), 364 So.3d 19, 27, for authority, which stated: "A court may find constructive knowledge 'if the conditions that caused the injury existed for such a period of time that those responsible, by the exercise of ordinary care and diligence, must have known of their existence in general and could have guarded the public from injury.'" (quoting *Encalade v. A.H.G. Solutions, LLC,* 2016-0357, p. 12 (La. App. 4 Cir. 11/16/16), 204 So.3d 661, 668).

In *Carrero*, the daughter of a restaurant patron filed suit against the restaurant as a result of the injury and subsequent death of the patron. The patron had exited the restaurant using the ramp that served as the main entrance and exit. The patron walked down the right side of the ramp and supported herself with the

middle handrail. The petition provided that "the middle handrail ended without warning before the ramp ended, and when Mrs. Carrero [the patron] reached the end of the ramp, her right hand slipped off the end of the handrail, causing her to lose her balance and tumble to the concrete ramp and the ground." *Id.* at p. 2, 364 So.3d at 21. The petition further alleged that the handrail "failed to extend at least 12 inches beyond the end of the sloped ramp," in violation of "the ANSI [American National Standards Institute] Code and the Americans with Disability Act [] Accessibility Guidelines." *Id*. at p. 3, 364 So.2d at 22. The record indicated that the handrails fell "eight inches short" of compliance. *Id*. at p.11, 364 So.2d at 26.

The restaurant filed a motion for summary judgment claiming there was no evidence demonstrating that it knew or should have known of the alleged defective handrail.[1] In opposition, the plaintiff submitted expert evidence showing that the ramp violated building codes and ADA guidelines. Specifically, the plaintiff noted that the handrail failed to extend 12 inches beyond the last sloped segment of the ramp. *Id.* at p. 9, 364 So.3d at 25. The trial court granted the motion for summary judgment. The plaintiff moved for new trial, which was denied.

However, on appeal, the Fourth Circuit, found that evidence of the restaurant's "violations of the safety and building codes governing handrails created a genuine issue of material fact as to whether [the restaurant] had constructive knowledge of the handrail's unreasonably dangerous condition." *Id.* at p. 10, 364 So.3d at 26.[2]

---

[1] The restaurant also moved for summary judgment on the grounds that there was no evidence that the handrail was unreasonably dangerous because it was open and obvious to all.

[2] The Court also found that the defective handrail was not open and obvious as the "handicap ramp gradually sloped downward, and a pedestrian using it would not have realized that the

Similarly, here, Plaintiff's expert, Maginnis, attested to numerous violations of safety and building codes applicable to the stairs and handrails and thus under *Carrero*, this is sufficient to establish an issue of material of fact as to whether Defendants should have known that the condition of the stairs amounted to an unreasonably dangerous defect.

Defendants, however, contend that Plaintiff's reliance is misplaced because in *Carrero*, the handrail was eight inches shorter than the ADA required whereas in the present case there was a one-inch deficiency in the stair treads. Defendant further contends that "this deficiency" is not the cause of Plaintiff's fall and thus there is no basis for imposing knowledge on Defendants for violation of a building code. Defendant insists that the evidence shows that Plaintiff "did not fall because the stair was too small or because she could not distinguish one stair from the next—the evidence shows she fell because there *was* a stair and because her ability to navigate the stairs was impaired [by alcohol]." (emphasis in original).

However, we do not find that that the record clearly established what caused Plaintiff to fall. Moreover, Maginnis cited to a myriad of code violations related to the handrails, stairs risers, stair treads, and even the surface and texture of the stair flights. While evidence that a condition violates an applicable code does not necessarily prove that the condition is unreasonably dangerous, under this Court's opinion in *Carrero* building code violations create a question of fact as to whether a defendant should have known of a defective condition. Here, because there is evidence that the stairs wherein Plaintiff fell violated various building and safety

---

handrail abruptly ended before the end of the slope until she reached the end of the handrail." *Carrero*, 2019-0158, p. 14, 364 So.3d at 28.

codes, there is sufficient evidence to show Defendant had constructive knowledge of the defective condition to defeat summary judgment.

Furthermore, on motions for summary judgment, "factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent's favor." *Citron v. Gentilly Carnival Club, Inc.*, 2014-1096, p. 12 (La. App. 4 Cir. 4/15/15), 165 So.3d 304, 312 (citing *Willis v. Medders,* 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049, 1050). Accordingly, the trial court erred in granting the motion for summary judgment.

**DECREE**

Resolving all doubt in favor of Plaintiff and a trial on the merits, genuine issues of material fact exist as to whether the condition of the stairs created an unreasonable risk of harm and whether Defendants knew or should have known of the defective condition. The trial court thus erred in granting the motion for summary judgment in favor of Defendants. For these and the above stated reasons, the trial court's judgment is reversed and the matter is remanded for further proceedings.

**REVERSED AND REMANDED**